**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **218 7th STREET SE LLC**, | |
| *Plaintiff*, | |
| **v.** | Civil Action No.: 1:25-cv-03625-ABJ |
| **SCHOOL OF SMIZE LLC**, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS' MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION**
**AND FOR FAILURE TO STATE A CLAIM**

Defendants School of Smize LLC ("**School of Smize**"), Tyra Banks, and Louis Martin (collectively "**Defendants**"), by their undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), move to dismiss the Complaint filed by Plaintiff 218 7th Street SE LLC ("**Plaintiff**") for lack of subject matter jurisdiction and for failure to state a claim.

**INTRODUCTION**

This commercial lease dispute varies from the garden-variety in only one respect: it features a celebrity supermodel and her partner, both personally named as defendants on specious veil-piercing grounds, in an opportunistic ploy by Plaintiff to extort money from Defendants after materially breaching its own lease.

In 2020, Tyra Banks founded SMiZE & DREAM (originally Smize Cream), a boutique ice cream brand focused on selling innovative ice cream products in immersive ice cream shops. The venture was inspired by Ms. Banks's childhood memories of eating ice cream with her mother, long before her stardom, when she lived with her mother and brother in a tiny one-bedroom

apartment in south Los Angeles.[1] Over ice cream, Ms. Banks and her mother would bond and chat about their goals, their dreams, and the laser-focus required to make them reality. With SMiZE & DREAM, Ms. Banks sought to create a product and environment to help others tap into those same experiences of connection and dream-chasing that propelled her success.

After debuting with temporary pop-up shops in Los Angeles and Dubai, SMiZE & DREAM set its sights on Washington, D.C., envisioning it as the home of a flagship U.S. location that would serve not only as an ice cream store but also as a learning center for young adults to develop ground-up business skills and foster their entrepreneurial spirits. To that end, "School of Smize" was created, and the SMiZE & DREAM team began their search for space to lease while working closely with the mayor's office and other key stakeholders to bring their ice cream shop and learning center to fruition. In the interim, a temporary pop-up store in Woodley Park was opened to introduce and cultivate excitement for the SMiZE & DREAM brand in the District.[2]

On April 17, 2024, School of Smize entered into a Lease Agreement with Plaintiff (the "**Lease**"), believing to have found a landlord and location within D.C.'s bustling, food-centric Eastern Market neighborhood fit to serve as host of a flagship U.S. store and learning center. Unfortunately, those beliefs were mistaken, as School of Smize discovered that Plaintiff had materially breached the Lease in several respects, as further detailed below. Despite this, School of Smize attempted to resolve matters with Plaintiff amicably, but those efforts were rejected. Consequently, School of Smize was left no choice but to terminate the Lease; a great

---

[1] *See* SMIZE & DREAM, *Little Tyra & Mama Carolyn's Story*, https://www.smize.com/our-story (last visited Nov. 10, 2025); ENTERTAINMENT WEEKLY, *Tyra Banks and her mom break down in tears over model's surprise ice cream shop opening: 'This is dedicated to you'*, (June 24, 2025), https://ew.com/tyra-banks-mom-cry-smize-and-dream-ice-cream-shop-opening-11760515.

[2] *See* NBC4 WASHINGTON, *VP Kamala Harris stops by Tyra Banks' new ice cream shop in DC*, (July 19, 2024), https://www.nbcwashington.com/entertainment/the-scene/smizing-in-dc-why-tyra-banks-chose-dc-for-her-new-pop-up-ice-cream-shop/3669621/.

disappointment to School of Smize and the SMiZE & DREAM team after the significant time and costs spent planning for the launch of the D.C. site.

Formal notice of termination of the Lease was given to Plaintiff on September 9, 2024. For months thereafter, Plaintiff did not respond at all to the termination notice, leading Defendants to believe that Plaintiff had correctly acknowledged its Lease breaches, accepted termination, and moved on to other potential tenants. SMiZE & DREAM itself moved on by pivoting towards a new location for its flagship store: Syndey, Australia, the city that Ms. Banks and her partner, Louis Martin, now call home.[3]

Then, in August 2025, Plaintiff provided its very first response to School of Smize's termination notice – in the form of a contemptuous demand letter from Plaintiff's counsel threatening to sue School of Smize, and Ms. Banks and Mr. Martin *personally*, unless they paid Plaintiff an exorbitant ransom of $2,951,331. After Defendants refused to kowtow to Plaintiff's celebrity shakedown, Plaintiff commenced this action by filing a Complaint rife with outrageous lies and slanders, including the shameful and utterly false accusation that Ms. Banks somehow "weaponized her celebrity influence to deter Mr. Powell from filing suit." Nothing could be further from the truth. On the contrary, despite Plaintiff's material Lease breaches, Ms. Banks and Mr. Martin attempted to resolve matters with Mr. Powell amicably, who staunchly refused.

Libelous accusations aside, Plaintiff's lawsuit suffers from fatal jurisdictional defects and asserts claims that lack any legal merit, and should be promptly dismissed by this Court. First, while baldly invoking this Court's diversity of citizenship jurisdiction, the Complaint fails to

---

[3] *See* INSIDER RETAIL, *Tyra Banks has launched the flagship location of her ice cream brand, Smize & Dream, in the heart of Sydney's Darling* Harbour, (July 11, 2025), https://insideretail.com.au/stores/tyra-banks-opens-first-smize-dream-ice-cream-store-in-australia-202507.

identify the citizenship of _any_ party to this case, even itself.  In reality, diversity of citizenship does not exist because, as detailed below, Ms. Banks is a U.S. citizen domiciled abroad, and is therefore a "stateless" person that destroys diversity jurisdiction.  And because School of Smize's underlying sub-sub-member is Ms. Banks, in her capacity as trustee of a trust, School of Smize is similarly "stateless" for diversity jurisdiction purposes.  Therefore, at the outset, the Court lacks subject matter jurisdiction and must dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1).

Second, Plaintiff "pleads itself out of court" by admitting to its own prior material breaches which excused School of Smize's performance under the Lease and entitled School of Smize to terminate it.  Thus, Plaintiff's contract-based claims in Counts I-III of the Complaint fail as a matter of law.  Moreover, Plaintiff's veil-piercing and alter ego claims against Ms. Banks and Mr. Martin (Count IV), aside from being defectively pled, rely on nothing more than formulaic recitations of the elements of these doctrines, without asserting any _facts_ supporting the application of these extraordinary legal theories – and to be clear, no such facts actually exist.  The remainder of Plaintiff's claims, for unjust enrichment and declaratory judgment (Counts V and VI), are legally precluded on various grounds described below.  Accordingly, all six of Plaintiff's asserted causes of action fail as a matter of law, and should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## **FACTUAL BACKGROUND**

On April 17, 2024, Plaintiff and School of Smize entered into the Lease, a true and correct copy of which is attached as Exhibit 1.[4]  The only parties to the Lease were Plaintiff, as Landlord, and School of Smize, as Tenant.  Neither Ms. Banks nor Mr. Martin were parties to the Lease; nor did either of them (or anyone else) sign any personal guaranty in connection with the Lease.

---

[4] A hard-to-read copy of the Lease was attached as Exhibit B to the Complaint.

Rather, the only "guaranty" of any kind contemplated by the Lease was a letter of credit to secure certain short-term rent obligations, specified in Section 21.1 of the Lease. This letter of credit was in addition to a $60,000 security deposit paid to Plaintiff, pursuant to Section 22.24 of the Lease.

Under the Lease, Plaintiff agreed to lease to School of Smize:

> the premises (the "**Premises**") shown on Exhibit "A", **being the real property in the District of Columbia referred to as 218 7th Street SE, Washington, DC 20003, <u>including the land and all improvements located thereon</u>**.

Lease at § 2.1 (emphasis added). Despite reference to an "Exhibit A" in the above-quoted text, no such exhibit was ever attached to the Lease, a fact acknowledged by Plaintiff. *See* Compl. at ¶ 32. Nevertheless, Section 2.1 clearly and unequivocally defined the Premises as the <u>entire property</u> located at 218 7th Street SE with "<u>all improvements located thereon</u>," without any carveouts or exclusions noted anywhere in the Lease. As described by Plaintiff, the improvements of the Premises comprise of a building with four floors plus a basement. *See* Compl. at ¶ 25.

Plaintiff's own Complaint admits to its breach of Section 2.1. Specifically, Plaintiff admits that, after the Lease's execution, a substantial part of the Premises was still under lease to other residential tenants. *See* Compl. at ¶ 41. In fact, as Exhibit E to its Complaint, Plaintiff attaches the sworn Declaration of Adele Sheehan, who attests that she currently rents the top two floors of the Premises and has done so since before the Lease was signed. *Id.* at Exhibit E, ¶¶ 1-2. With the top two floors occupied by other tenants, Plaintiff failed and was entirely unable to deliver 40% (two out of five floors) of the promised Premises to School of Smize.

To be sure, though the Complaint contains extensive allegations about pre-Lease negotiations and supposed "understandings" between the parties, *see* Compl. at ¶¶ 27-30, Section 22.16 of the Lease included a clear and classic integration clause merging all pre-Lease discussions into the Lease, as follows:

All negotiations, considerations, representations, and understandings between Landlord and Tenant are incorporated herein and may be modified or altered only by agreement in writing between Landlord and Tenant, and no act or omission of any employee or agent of Landlord shall alter, change, or modify any of the provisions hereof.

Lease at § 22.16.

Additionally, pursuant to Article VI of the Lease titled "Landlord Improvements," Plaintiff was required to deliver the Premises with certain physical conditions in place, as follows:

Landlord shall deliver the Premises in its "As-Is" condition, **with all existing mechanical, electrical, and plumbing systems in good working order, and a minimum of 400 amps electrical service and a water line and drain stubbed to the rear of the first floor**. The 2nd floor units and bathroom shall be delivered as is ready for finishes.

Lease at Art. VI (emphasis added).

Plaintiff materially breached this Lease obligation as well. Specifically, upon taking possession of the Premises, School of Smize learned that the building suffered myriad mechanical, electrical, and plumbing deficiencies, including outdated electrical subpanels that did not generate sufficient electricity and were not up to code, and an HVAC system equipped with residential units entirely unfit for commercial use and with other old, unmaintained, and defective system components. Initial estimates from School of Smize's consultants indicated that upgrading the building's systems to even minimum building code levels would cost approximately $980,000 – the equivalent of about four years' rent under the Lease. Certainly, the Premises' mechanical, electrical, and plumbing systems were not delivered "in good working order" as required under Article VI of the Lease. Moreover, the second-floor bathroom spaces were not delivered in "ready for finishes" condition as required under Article VI.

Due to Plaintiff's material breaches, in accordance with established D.C. law and after good faith attempts to resolve matters were rejected by Plaintiff, School of Smize terminated the

Lease and surrendered the Premises to Plaintiff by notice delivered on September 9, 2024. Notably, School of Smize delivered the termination notice more than four months before the Lease's "Rent Commencement Date" of February 1, 2025, giving Plaintiff ample time to relet the Premises to a new tenant without losing any rent revenue from the Lease termination.[5] Consequently, because no rent had become due under the Lease, School of Smize demanded the return of its $60,000 security deposit in its termination notice.

As stated above, School of Smize received no response from Plaintiff to its Lease termination notice until eleven months later, when Plaintiff's counsel sent its scathing missive demanding immediate payment of nearly $3 million, without legal basis or justification.  *See* Compl. at ¶ 44.  Defendants responded by rightly denying liability, and Plaintiff countered by filing this meritless lawsuit.

## **ARGUMENT**

I.      **THE COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF HAS NOT, AND CANNOT, ADEQUATELY PLEAD COMPLETE DIVERSITY.**

   A.      **Legal Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction," with power to adjudicate only those cases "authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*  Thus, Plaintiff, as the party asserting jurisdiction, must plead **facts** that bring this suit within the Court's

---

[5] *See* Lease at § 1.1(f) (defining "Rent Commencement Date" as nine months after the "Lease Commencement Date," itself defined in § 1.1(c) as May 1, 2024); *See also* Lease at § 4.1 (providing that monthly rent obligations began only on the "Rent Commencement Date").

jurisdiction. *See* Fed. R. Civ. P. 8(a)(1) (a pleading "must contain… grounds for the court's jurisdiction). Failure to plead such facts warrants dismissal of the action. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Jurisdiction must be assessed "as a threshold matter," before considering the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss an action for lack of subject-matter jurisdiction. A Rule 12(b)(1) motion "imposes on the Court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority" and "[f]or this reason, the plaintiff's factual allegations in the complaint will bear closer scrutiny [than] in resolving a Fed. R. Civ. P. 12(b)(6) motion." *Grand Lodge of the FOP v. Ashcroft,* 185 F. Supp. 2d 9, 13 (D.D.C. 2001). As such, the Court "is not limited to the allegations contained in the complaint" and "may consider materials outside the pleadings." *Lipsman v. Sec'y of the Army,* 257 F. Supp. 2d 3, 6 (D.D.C. 2003); *see also Bank of America, N.A. v. FDIC,* 908 F. Supp. 2d 60, 76 (D.D.C. 2012) (court ruling on a 12(b)(1) motion "may consider such materials outside the pleadings as it deems appropriate."). Accordingly, Defendants attach the Declaration of Tyra Banks ("**Banks Decl.**") as Exhibit 2 hereto in support of its request for dismissal pursuant to Rule 12(b)(1).

If a defendant challenges the factual basis for the Court's subject matter jurisdiction, the Court may not deny the defendant's motion simply by "assuming the truth of the facts alleged by the plaintiff and disputed by the defendant." *Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C. Cir. 2000). Rather, the Court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Id.* On a motion to dismiss under Rule 12(b)(1), "the plaintiff bears the burden of establishing the

factual predicates of jurisdiction by a preponderance of the evidence." *Erby v. United States,* 424 F. Supp. 2d 180, 182 (D.D.C. 2006).

Here, the Complaint does not present any federal question or claim. Thus, subject matter jurisdiction can only be based on diversity pursuant to 28 U.S.C. § 1332. Plaintiff was required to affirmatively allege facts establishing diversity jurisdiction and unquestionably failed to do so. That alone requires dismissal. Moreover, as detailed below, Plaintiff cannot possibly plead diversity because it does not exist, as two of the three Defendants are "stateless." Accordingly, dismissal is required.

### B.    Dismissal Is Required Because Plaintiff Failed to Affirmatively Allege Facts Establishing Diversity Jurisdiction.

The diversity jurisdiction statute provides: "District Courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of the different States." 28 U.S.C. § 1332(a)(1).  The statute requires complete diversity between the parties; meaning, "diversity jurisdiction does not exist unless each defendant is a citizen of a different state from each plaintiff."  *In re Lorazepam & Clorazepate Antitrust Litig. v. Mylan Labs.,* 631 F.3d 537, 541 (D.C. Cir. 2011).  Citizenship is determined by a party's domicile, which in turn is determined by "physical presence in a state, and intent to remain there for an unspecified or indefinite period of time." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984).   A plaintiff cannot establish diversity by simply averring that the opposing party is domiciled in a different state; rather, it must "affirmatively aver, with specificity, the *domiciles* of each of the parties to the action." *Bettis v. Montgomery*, 701 F. Supp. 256, 258 (D.D.C. 1989) (italics in original).

The citizenship of a party depends on its nature. For purposes of diversity jurisdiction, a natural person who is an American citizen is a citizen of the state in which he or she is domiciled.

*Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 828 (1989). Unincorporated associations, including LLCs, have the citizenship of each of their members. *See Americold Realty Trust v. Conagra Foods, Inc.,* 577 U.S. 378, 381-82 (2016). Accordingly, to plead the citizenship of an LLC, a plaintiff must identify each of the LLC's members and allege facts establishing each member's citizenship. *Carden v. Arkoma Assocs.,* 494 U.S. 185, 195–96 (1990). By extension, "when an 'LLC has, as one of its members, another LLC, the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be to determine the citizenship of the LLC.'" *Laroach v. BridgePoint Healthcare, LLC*, WL 6434768, at *1 (D.D.C. Dec. 7, 2018) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010)).

Here, Plaintiff fails to establish the citizenship of *any* of the parties, as the Complaint is utterly devoid of allegations of citizenship. Indeed, Plaintiff does not even allege <u>its own</u> citizenship. All Plaintiff alleges regarding its identity is that Plaintiff is a "limited liability company organized under the laws of the District of Columbia" and that Christopher Powell (who is not a party in this action) "is a D.C.-based entrepreneur and landlord" who owns Plaintiff and is authorized to act on its behalf. *See* Compl. ¶¶ 5, 14 & 25. None of these allegations speak to Plaintiff's citizenship, or even Mr. Powell's citizenship for that matter. To be sure, Plaintiff's state of organization is entirely irrelevant for diversity jurisdiction purposes. *See Laroach*, 2018 WL 6434768, at *1 (citing *Shulman v. Voyou, LLC*, 305 F. Supp. 2d 36, 40 (D.D.C. 2004)) ("An LLC's state of 'incorporation' (which is a non-sequitur) and principal place of business are irrelevant to its citizenship.").

As an LLC, Plaintiff's citizenship is based on the citizenship of all its members. *See Americold,* 577 U.S. at 381–82; *Carden.,* 494 U.S. at 195–96. The Complaint, however, fails to

provide any factual allegations as to who Plaintiff's members are. Even assuming *arguendo* that Mr. Powell is a member of Plaintiff, there are no allegations asserting that he is the <u>only</u> member. And even if the Complaint included such an allegation, the Complaint nevertheless fails to allege facts regarding <u>Mr. Powell's citizenship</u>. Again, an individual's citizenship for purposes of diversity jurisdiction depends on the person's domicile, which itself is determined by two factors: physical presence in a state and intent to remain there. *Prakash,* 727 F.2d at 1180. The Complaint does not allege any facts establishing where Mr. Powell is domiciled. The Complaint's meager allegation that Mr. Powell is "based" in the District of Columbia, Compl. at ¶ 25, is patently insufficient. *See Meng v. Schwartz*, 305 F. Supp. 2d 49, 55 (D.D.C. 2004) (explaining that a party's citizenship "cannot be established presumptively or by mere inference."). Thus, Plaintiff's failure to even allege its own citizenship warrants dismissal. *See Novak v. Cap. Mgmt. & Dev. Corp.*, 452 F.3d 902, 906 (D.C. Cir. 2006) ("Citizenship is an essential element of federal diversity jurisdiction; failing to establish citizenship is not a mere technicality.").

The Complaint also fails to allege the citizenship of any of Defendants. Like Plaintiff, Defendant School of Smize LLC is a limited liability company. *See* Compl. ¶ 15. The Complaint alleges that School of Smize is "organized under the laws of the State of Delaware." *Id.* Again, School of Smize's state of organization is irrelevant. *See Laroach*, 2018 WL 6434768, at *1. Rather, Plaintiff was required to plead facts regarding the identity of School of Smize's members and the citizenship of each member. The Complaint fails to do so. Though the Complaint alleges, <u>upon information and belief</u>, that Defendants Banks and Martin are members of School of Smize (which is incorrect because, as discussed below, they are not), the Complaint fails to allege if there are other members. *See* Compl. ¶¶ 16-17. Further, the Complaint is noticeably devoid of any factual allegations whatsoever as to the citizenship of Defendants Banks or Martin or where either

is domiciled.[6] Thus, the Complaint fails to plead facts from which the Court could determine the citizenship of any of Defendants to assess whether diversity jurisdiction exists.

At bottom, the Complaint fails to plead the citizenship of any party, making it indisputable that the Complaint fails to adequately plead diversity jurisdiction.

### C.    Dismissal Is Required Because Two of the Three Defendants Are "Stateless," Thereby Destroying Complete Diversity.

A United States citizen who "has no domicile in any State ... is stateless" and cannot sue or be sued in federal court on the basis of diversity. *See Newman–Green, Inc.,* 490 U.S. at 828; *Swiger v. Allegheny Energy, Inc.,* 540 F.3d 179, 183–184 (3rd Cir. 2008) ("An American citizen domiciled abroad, while being a citizen of the United States is, of course, not domiciled in a particular state, and therefore such person is 'stateless' for purposes of diversity jurisdiction."). Put plainly, a "stateless" defendant destroys diversity jurisdiction, always. *See, e.g., Swiger,* 540 F.3d at 185 (holding federal courts lacked diversity jurisdiction over law firm Morgan Lewis because one of its partners was a "stateless" American citizen domiciled abroad). Here, evidence properly before the Court in deciding the Rule 12(b)(1) portion of this Motion shows that the Complaint's conclusory allegation of complete diversity (*see* Compl. at ¶ 21) is incorrect because Defendants Banks and School of Smize are both "stateless" for diversity jurisdiction purposes.

Ms. Banks is a United States citizen. <u>Exhibit 2</u>, Banks Decl. ¶ 3. Ms. Banks, however, is domiciled abroad. As the Complaint itself recognizes (*see* Compl. ¶ 12), Ms. Banks resides in

---

[6] Notably, the caption of the Complaint lists the same address in California for each of Defendants. That address (10960 Wilshire Blvd., 5th Floor, Los Angeles, CA 90024) is not a residence. Rather, it is the business address of NKSFB, LLC – a renowned business management firm. *See* https://www.nksfb.com/our-company/find-us/. Neither Ms. Banks nor Mr. Martin reside at that address, making it irrelevant for diversity jurisdiction purposes.

Australia, a widely reported fact which Ms. Banks has publicly discussed.[7] Specifically, since August 2023, Ms. Banks has lived in Sydney, Australia with her partner, Mr. Martin, and her family. Banks Decl. at ¶ 4. Ms. Banks engages in substantial work and business in Australia in connection with SMiZE & DREAM, as Australia is home to the brand's flagship store and is where its production facility is located. *Id.* at ¶ 5. In fact, her move to Australia was largely motivated by SMiZE & DREAM's presence in Australia. *Id.* Ms. Banks's decision to move was later reinforced by the destruction of her former home in the January 2025 Palisades wildfires. *Id.* at ¶ 6.[8] As such, Ms. Banks considers Sydney, Australia to be her true, fixed, principal, and permanent home, and she intends to remain living there indefinitely. *Id.* at ¶ 7. To that end, Ms. Banks and her family are in the process of applying for permanent visas in Australia. *Id.*

In sum, Ms. Banks is an American citizen domiciled abroad, rendering her "stateless" for diversity jurisdiction purposes. *Accord Wagshal v. Rigler,* 947 F.Supp. 10, 13 (D.D.C. 1996) (generally accepted indicia of domiciliary status includes a person's current residence and a sworn declaration showing an intent to remain indefinitely); *Collector's Coffee Inc. v. Debevoise & Plimpton LLP*, 2025 WL 1077507, at *3 (D.C. Cir. 2025) (affirming that law firm Debevoise was "stateless" based on four partners' attestations that they were U.S. citizens residing abroad with no intention to return to live in the U.S.).

Defendant School of Smize is similarly "stateless" for diversity purposes. As discussed above, School of Smize is an LLC, so its citizenship is based on its members. Contrary to Plaintiff's

---

[7] *See, e.g.,* PEOPLE.COM, *Tyra Banks Opens Up About Why She Moved to Australia with Her Family: 'Dream Come True'*, (April 14, 2025), https://people.com/tyra-banks-reveals-why-she-moved-to-australia-with-her-family-11715202.

[8] *See* USA TODAY, *Tyra Banks reveals she lost her LA home in wildfires: 'It's tough'*, (January 20, 2025), https://www.usatoday.com/story/entertainment/celebrities/2025/01/20/tyra-banks-home-destroyed-palisades-wildfires/77835243007/.

allegations made "upon information and belief," neither Ms. Banks nor Mr. Martin is a member of School of Smize. Rather, the sole member of School of Smize is Smize Cream SMP LLC, a Delaware limited liability company. Banks Decl. at ¶ 8; *See also* <u>Exhibit 3</u> (first and last page of LLC Agreement of School of Smize).  Smize Cream SMP LLC, in turn, also has one sole member, Smize Cream Holdings LLC (also a Delaware LLC); and the sole member of Smize Cream Holdings LLC is a revocable trust of which Ms. Banks serves as trustee.  Banks Decl. at ¶¶ 9-10; <u>Exhibits 4 and 5</u> (first and last pages of LLC Agreements of Smize Cream SMP LLC and Smize Cream Holdings LLC).   For diversity purposes, a traditional trust has the citizenship of its trustees. *Wang by & through Wong v. New Mighty U.S. Tr.*, 843 F.3d 487, 494 (D.C. Cir. 2016). Thus, since Ms. Banks is the trustee of the trust that is the ultimate individual sub-member of School of Smize, School of Smize's citizenship for jurisdictional purposes is the same as Ms. Banks's: stateless.

28 U.S.C. § 1332 requires complete diversity. Both Ms. Banks and School of Smize are "stateless" for purposes of diversity jurisdiction, destroying complete diversity. Consequently, this Court lacks subject matter jurisdiction over this action and must dismiss it.

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.    Legal Standard for Motion to Dismiss for Failure to State a Claim

Fed. R. Civ. P. 12(b)(6) provides that a defendant may assert by motion the defense that the plaintiff has failed to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, "the pleadings must suggest a plausible scenario that shows that the pleader is entitled to relief." *Jones v. Horne,* 634 F.3d 588, 595 (D.C. Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Although "detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion ... a

plaintiff must furnish more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

**B.      Counts I – IV of the Complaint Should Be Dismissed Because, Based on the Complaint's Own Allegations, Plaintiff Materially Breached the Lease First, Entitling School of Smize to Terminate the Lease.**

The face of the Complaint shows that Plaintiff materially breached the Lease first by failing to deliver the entire Premises to School of Smize as required under the Lease. Given Plaintiff's prior material breach, School of Smize was legally relieved from performing under the Lease and was legally entitled to terminate it. Therefore, even if all the factual allegations in the Complaint were true (they are not), under the prior material breach doctrine and established D.C. law,[9] Plaintiff cannot prove any set of facts in support of its contract-based claims in Counts I-III[10] or its derivative veil-piercing claim in Count IV.[11] Essentially, Plaintiff has "plead[ed] [it]self out of court by alleging facts that render success on the merits impossible." *Nurriddin v. Bolden*, 818 F.3d 751, 757 (D.C. Cir. 2016) (first alteration in *Nurriddin*; second alteration added).

---

[9] The Lease is governed by D.C. law per its choice of law clause.  *See* Lease at § 22.13.

[10] Count I is a breach of contract claim, and Count II is a claim for anticipatory breach of contract. Count III is purportedly an independent claim for breach of the implied covenant of good faith and fair dealing. While D.C. law is "unsettled" on whether an independent cause of action for breach of the implied covenant exists, it is settled that such a claim "must necessarily arise out of the performance or enforcement of the contract." *Xereas v. Heiss*, 933 F. Supp. 2d 1, 8 (D.D.C. 2013) (citation and quotations omitted). In other words, a claim for breach of the implied covenant of good faith and fair dealing is, at its core, a contract claim.

[11] Count IV is purportedly a stand-alone claim for piercing the corporate veil and alter ego liability. This stand-alone claim is suspect since, as explained *infra*, veil-piercing and alter ego liability are theories of liability, *not* independent causes of action. *See United States ex rel. Jenkins v. Sanford Cap., LLC*, 2020 WL 5440551, at *7 (D.D.C. Sept. 10, 2020) (collecting cases); *Giron v. Zeytuna, Inc.*, 597 F. Supp. 3d 29, 44 (D.D.C. 2022).  To the extent Plaintiff seeks to impose such liability on Defendants Banks and Martin in connection with Counts I-III, its attempt fails because, as discussed herein, Counts I-III fail as a matter of law due to Plaintiff's prior material breach of the Lease. Additional defects in Plaintiff's veil-piercing and alter ego theories are addressed *infra*.

A breach of contract is "an unjustified failure to perform all or any part of what is promised in a contract entitling the injured party to damages." *Window Specialists, Inc. v. Forney Enters., Inc.*, 106 F. Supp. 3d 64, 89 (D.D.C. 2015) (applying D.C. law). "A 'material' breach is one where the injured party received something substantially less or different from that for which he bargained." *Id.*

The Lease clearly and unambiguously defined the Premises as the "real property in the District of Columbia referred to as 218 7th Street SE, Washington, DC 20003, **including the land and all improvements located thereon**." *See* Lease at § 2.1 (emphasis added). Unequivocally, Plaintiff agreed to demise the entirety of the property to School of Smize, including the entire building, without exclusion of any spaces or levels. The Complaint admits that Plaintiff failed to do so. *See* Compl. ¶¶ 32, 40-41. Indeed, the Complaint acknowledges that Plaintiff did not, and could not, deliver two of the five levels of the Premises because the two top floors were leased to other residential tenants. *Id.* at ¶ 41 & Ex. E ¶¶ 1-2. Plaintiff's admitted failure to deliver the Premises pursuant to the terms of the Lease undeniably constitutes a material breach of the Lease. To be sure, it is beyond reasonable dispute that receiving only three-fifths of the Premises is "substantially less or different from" that which School of Smize bargained for under the express terms of the Lease – namely, the entire building located at 218 7th Street SE.

Given Plaintiff's material breach for failure to deliver the entire Premises, under well-established law, School of Smize was excused from performing under the Lease and was entitled to terminate it – which, as the Complaint admits, School of Smize did. *See* Compl. ¶¶ 35, 59. Under the prior material breach doctrine, "a party may defend against a breach of contract claim on the ground that its performance was excused by the other party's prior breach of the contract." *United States v. Kellogg Brown & Root Servs., Inc.,* 856 F. Supp. 2d 176, 185 (D.D.C. 2012). As the D.C.

Court of Appeals recently reiterated in a commercial lease case, "[i]t is a central principle of contract law that one party's material breach of an agreement allows the other party to stop performing under the agreement, or to put it another way, to terminate the agreement entirely." *Hto7, LLC v. Elevate, LLC*, 319 A.3d 368, 375–76 (D.C. 2024) (collecting cases). Consistent with that central principle, the Court in *Hto7* upheld the tenant's "common law right to terminate the contract in the event of [the landlord's] material breach." *Id.* at 378.

Attempting to justify its admitted failure to deliver the entire Premises to its Tenant, Plaintiff alleges a plethora of purported negotiations, representations, and supposed understandings between Plaintiff and School of Smize in an effort to undermine the contractually agreed-upon language in the Lease. *See* Compl. ¶¶ 26-28, 35, 41. Plaintiff's reliance on this extrinsic evidence is meaningless because it contravenes the Lease's integration clause and the parol evidence rule.

"Integration clauses, also known as merger clauses, are contract provisions that generally state that the agreement as written constitutes the entire agreement between the parties and **<u>supersedes any prior representations</u>**." *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 201 (D.D.C. 2016) (applying D.C. law) (emphasis added).  Under D.C. law, "[a] completely integrated contract may not be supplemented with prior representations not ultimately included therein." *Id.* (quoting *Hercules & Co., Ltd. v. Shama Restaurant Corp.*, 613 A.2d 916, 928 (D.C.1992)).  The Lease was a fully integrated contract pursuant to its integration clause, which provided that:

> All negotiations, considerations, representations, and understandings between Landlord and Tenant are incorporated herein and may be modified or altered only by agreement in writing between Landlord and Tenant, and no act or omission of any employee or agent of Landlord shall alter, change, or modify any of the provisions hereof.

Lease at § 22.16.  Hence, as sophisticated commercial parties, Plaintiff and School of Smize agreed that the language of the Lease controls and that any supposed conversations, beliefs, or understandings not included in the Lease are meaningless, because the terms of the Lease speak for themselves.  Were this Court to consider Plaintiff's allegations of pre-Lease representations not included in the Lease, it would "defeat the clear words and purpose of the integration clause" and "contracts would not be worth the paper on which they are written."  *Jacobson*, 168 F. Supp. 3d at 202 (quoting *Hercules*, 613 A.2d at 930).

A "corollary" of the integration clause is the common law parol evidence rule, which provides that "when the parties to a contract have reduced their entire agreement to writing, the court will disregard and treat as legally inoperative parol evidence of the prior negotiations and oral agreements."  *Jacobson*, 168 F. Supp. 3d at 201-02 (quoting *Hercules*, 613 A.2d at 928).  The purpose of the rule is "to promote the stability of transactions by preventing disgruntled parties from avoiding obligations by alleging oral understandings that conflict with their written agreements."  *Hercules*, 613 A.2d at 929.  Taken together, the Lease's integration clause and the parol evidence rule bar consideration of purported pre-Lease discussions and "understandings" that Plaintiff seeks to inject into this case, and they support the written words of the Lease under which Plaintiff was obligated to demise the entire Premises to School of Smize but failed to do so.

Because (i) the Lease's language is clear and controlling and (ii) under that language and well-established law it is clear that Plaintiff cannot prove any set of facts in support of its claims in Counts I-IV that would entitle it to relief, the Court should dismiss Counts I-IV for failure to state a claim.

**C.      Count IV of the Complaint Should Be Dismissed, and Defendants Banks and Martin Should Be Dismissed Entirely from this Lawsuit, Because: (a) Neither Piercing the Corporate Veil Nor Alter Ego Liability Is an Independent Cause of Action; (b) There Are No Viable Claims in the Complaint to Which Either Theory Can Attach; and (c) Plaintiff's Allegations Are Insufficient to Impose Veil-Piercing or Alter Ego Liability against Defendants Banks or Martin.**

**1.      Choice of Law**

Piercing the corporate veil is an extraordinary procedure, under any jurisdiction's laws. "Courts reserve piercing the corporate veil for the **rare** circumstances in which an individual or corporation abuses the corporate form or exerts undue influence over a corporate entity to accomplish an improper or unlawful purpose." *Dole Food Co. v. Patrickson,* 538 U.S. 468, 475 (2003) (emphasis added). Nevertheless, the veil-piercing analysis begins with a determination of what law applies.  Where, as here, no federal interest is implicated, "the state where a corporation is incorporated, or where the alleged corporate wrongdoing occurred, normally dictates whether the corporate veil should be pierced." *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.,* 191 F. Supp. 2d 17, 20 (D.D.C. 2002).  Here, the alleged breaches occurred in D.C., but School of Smize is a Delaware LLC. Accordingly, either D.C. or Delaware law applies.

In the District of Columbia, "[g]enerally, the corporate entity will be respected[.]" *Estate of Raleigh v. Mitchell,* 947 A.2d 464, 470 (D.C. 2008). "Thus, corporate shareholders are not personally liable for a corporation's breach of contract." *Motir Servs., Inc. v. Ekwuno*, 191 F. Supp. 3d 98, 108 (D.D.C. 2016). "Corporate shareholders may nonetheless be personally liable under an 'alter ego' theory of liability, which 'courts apply to cast aside the corporate shield.'" *Id.* (quoting *Estate of Raleigh*, 947 A.2d at 470) (cleaned up).  But importantly, D.C. law recognizes that "**veil-piercing is an extraordinary procedure that is not to be used lightly. The case must present the extreme circumstances that call for disregard of the corporate form**." *Id.* at 109 (quoting

*Schattner v. Girard*, 668 F.2d 1366, 1370 (D.C.Cir.1981)) (cleaned up; emphasis added).  To pierce the corporate veil under the alter ego theory, D.C. law requires "(1) unity of ownership and interest, and (2) use of the corporate form to perpetrate fraud or wrong, or other considerations of justice and equity justify it." *Estate of Raleigh,* 947 A.2d at 470 (internal quotations and citation omitted).

Similarly, under Delaware law, "[d]isregard of the corporate entity is appropriate only in exceptional circumstances." *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012). Specifically, "[t]he law requires that fraud or injustice be found in the defendants' use of the corporate form." *Id.*  Therefore, courts applying Delaware law only pierce the corporate veil when a corporation is a "sham" and "exist[s] for no other purpose than as a vehicle for fraud." *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood,* 752 A.2d 1175, 1184 (Del. Ch. 1999).

The above comparison reveals that the veil-piercing laws of D.C. and Delaware are very similar, if not identical.   Indeed, this Court previously concluded as such in *Amore ex rel. Ests. of Amore v. Accor*, 529 F. Supp. 2d 85 (D.D.C. 2008), holding that "both [D.C. and Delaware] veil-piercing doctrines require a defendant to perpetuate a fraud through a corporate 'sham.'" *Id.* at 93. Indisputably, it is settled under both jurisdictions' laws that veil-piercing is an extraordinary theory that should be used sparingly.[12]  As such, and because D.C.'s restrictive veil-piercing doctrine will not permit Plaintiff to pierce any corporate veil in this case, Defendants will apply D.C. law for purposes of this Motion to Dismiss.  *See Beach TV Props., Inc. v. Solomon*, 306 F. Supp. 3d 70, 92 (D.D.C. 2018) (where no conflict of laws actually exists, D.C. law applies "by default").

---

[12] In fact, in *Lopes v. JetsetDC, LLC*, 994 F. Supp. 2d 135, 146-47 (D.D.C. 2014), this Court concluded that D.C. veil-piercing law is equivalent to Maryland law, which is recognized as a particularly restrictive jurisdiction with respect to piercing the corporate veil.

**2. Count IV of the Complaint must be dismissed because piercing the corporate veil and alter ego liability are not independent causes of actions.**

As an initial matter, Count IV is purportedly a stand-alone claim for piercing the corporate veil and alter ego liability. *See* Compl. ¶¶ 72-78. However, neither piercing the corporate veil nor alter ego liability is a cause of action; "rather, each is a theory of liability that can be raised in connection with an underlying cause of action." *See Giron v. Zeytuna, Inc.*, 597 F. Supp. 3d 29, 44 (D.D.C. 2022) (citing, *inter alia*, *United States ex rel. Jenkins v. Sanford Cap., LLC*, No. CV 17-239, 2020 WL 5440551, at *7 (D.D.C. Sept. 10, 2020) (collecting cases)). For this reason alone, the Court must dismiss Count IV for failure to state a claim.

**3. There are no viable causes of action to which veil-piercing or alter ego liability can attach.**

Because piercing the corporate veil and alter ego liability can only be raised in connection with an underlying cause of action, where there is no viable cause of action to which either form of liability can attach, dismissal of those theories of liability is required. *Cf. Giron*, 597 F. Supp. 3d at 44. Stated otherwise, piercing the corporate veil only becomes relevant if the corporate entity which the plaintiff seeks to pierce is itself liable.  As explained herein, School of Smize has no liability to Plaintiff.  Therefore, veil-piercing and alter ego liability are entirely inapplicable, and Defendants Banks and Martin must be dismissed from this lawsuit.

**4. Plaintiff's allegations are insufficient to impose veil-piercing or alter ego liability against Defendants Banks or Martin.**

As noted above, piercing the corporate veil and holding an individual personally liable under the alter ego theory can only proceed under D.C. law if a complaint includes *factual* allegations demonstrating "that there is (1) unity of ownership and interest, and (2) use of the corporate form to perpetrate fraud or wrong, or other considerations of justice and equity justify

it." *Estate of Raleigh,* 947 A.2d at 470. "[T]he decision to pierce will be influenced by considerations of who should bear the risk of loss and what degree of legitimacy exists for those claiming the limited liability protection of a corporation." *Vuitch v. Furr*, 482 A.2d 811, 815–16 (D.C. 1984). "Ultimately, 'it must appear that the corporation is not only controlled by [the individual defendant], but also that the separateness of the [individual] and the corporation has ceased and adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice.'" *Motir*, 191 F. Supp. 3d at 109 (alteration in *Motir*) (quoting *Camacho v. 1440 R.I. Ave. Corp.*, 620 A.2d 242, 249 (D.C. 1993)).

Here, the Complaint woefully fails to allege either prong of the aforementioned two-prong test. There are no factual allegations showing that separateness of Defendants Banks or Martin and School of Smize has ceased – in fact, as explained above, neither Ms. Banks nor Mr. Martin even own School of Smize.  Furthermore, no fraud, wrongdoing, or legitimate injustice has been alleged. Thus, this Court has yet another reason for dismissing Count IV and Defendants Banks and Martin from this lawsuit.

(i)   PRONG #1: UNITY OF OWNERSHIP OR INTEREST.

Under D.C. law, courts consider several factors to establish the first prong – unity of ownership and interest – of the test for piercing the corporate veil. *Motir*, 191 F. Supp. 3d at 108. These factors include, *inter alia,* "whether corporate formalities have been observed; whether there has been commingling of corporate and shareholder funds, staff and property; whether a single shareholder dominates the corporation; whether the corporation is adequately capitalized; and, especially, whether the corporate form has been used to effectuate a fraud." *Id.* (quoting *Lawlor v. District of Columbia*, 758 A.2d 964, 975 (D.C. 2000)).

In the present case, the Complaint is rife with conclusory statements, but devoid of _any_ _factual_ allegations to support the unity of ownership and interest prong of Plaintiff's alter ego theory. For example, the Complaint alleges, in purely conclusory fashion, that Ms. Banks and Mr. Martin exercised "complete dominion and control" over School of Smize and "misused that control," without ever alleging how or providing fact-based support of any sort. Compl. at ¶ 73. It further conclusorily alleges that "[u]pon information and belief, Defendants Banks and Martin own and dominate" School of Smize; though as discussed above, Plaintiff's information and belief is completely wrong. Compl. at ¶ 75. Similarly, the Complaint baldly alleges, again "upon information and belief," that School of Smize purportedly was "grossly undercapitalized at the time of its formation," again with no supporting factual basis whatsoever. Compl. ¶ 75.

These conclusory allegations are merely a recitation of the elements of alter ego liability and lack any _factual_ support. Plaintiff cannot rely on such barebone allegations in seeking to impose the extraordinary doctrines of veil-piercing and alter ego liability. Of course, "formulaic recitation of the elements" does not even satisfy the _Iqbal/Twombly_ pleading standard, _see Iqbal_, 556 U.S. at 678 (quoting _Twombly_, 550 U.S. at 555), and that pleading standard applies equally to the pleading of veil-piercing and alter ego liability theories. _See Motir_, 191 F. Supp. 3d at 109 (emphasizing that alter ego allegations must "satisfy Rule 8(a)(2) and _Iqbal_"). Plaintiff's non-factual, conclusory allegations are akin to those made by the plaintiff in _Motir_, which this Court held were entirely deficient in dismissing the claims made against a corporation's owner in that case. _Id._ at 109-111.

Moreover, the Complaint's bald allegation of School of Smize's purported undercapitalization at the time of its formation is expressly contradicted by its acknowledgement that, in accordance with the Lease, School of Smize remitted a $60,000 security deposit to Plaintiff.

*See* Compl. at ¶ 36. The fact that School of Smize was capable of paying a $60,000 security deposit upon executing the Lease indicates that School of Smize *was* sufficiently capitalized when it was formed. Given the Complaint is devoid of any facts to support its undercapitalization allegation and also contains self-contradictory allegations indicating School of Smize *was* adequately capitalized, Plaintiff's allegations need not be accepted as true and no inference in its favor can be made. *See Amore*, 529 F. Supp. 2d at 94 ("the court does not accept as true self-contradictory factual allegations and does not make favorable inferences that are unsupported by facts set out in the complaint").

The only other allegations in the Complaint offered in support of the unity of ownership and interest prong are allegations that Defendants Banks and Martin both were authorized signatories for School of Smize, exercised decision-making authority on behalf of School of Smize, and acted as its agents by purportedly "negotiat[ing] the Lease, orchestrat[ing] the venture, and direct[ing] the project." Compl. ¶¶ 16-17, 27-31, 34-35, 75. Quite frankly, these allegations allege nothing more than normal business activity of people running a business, which is patently insufficient to support piercing the corporate veil under an alter ego theory of liability. *See Motir*, 191 F. Supp. 3d at 109 (discussing that allegations of control do not sufficiently support an alter ego theory of liability).

Put simply, the Complaint's allegations fall woefully short of sufficiently alleging that "'the separateness of the [individual] and the corporation has ceased.'" *Id.* (quoting *Camacho*, 620 A.2d at 249). Because the Complaint lacks any *factual* allegations indicating that corporate formalities were disregarded, that the corporate defendant was purposely undercapitalized, or that School of Smize's funds and assets were mingled with Defendants Banks's or Martin's assets or were diverted for non-corporate or personal uses, all of the Complaint's claims that rely on the

alter ego theory of liability to pierce the corporate veil must be dismissed, and Defendants Banks and Martin must be dismissed from this case.

Tacitly admitting its factual deficiencies, the Complaint contends that "[b]ased on the facts presently known, Landlord reasonably expects discovery will yield evidence demonstrating that Defendants Banks and Martin used Defendant Tenant as a mere alter ego, lacking autonomy and separateness." *See* Compl. ¶ 75. Ironically, whatever "facts" Plaintiff "presently know[s]" are <u>*noticeably absent*</u> from the Complaint. The Complaint is devoid of any actual *facts* indicating that corporate formalities were disregarded. Thus, Plaintiff's discovery plea is based solely on mere conjecture and speculation, and Plaintiff may not embark on such a "fishing expedition" with the remote hope that discovery may lead to facts supporting its request to pierce the corporate veil. *See, e.g.*, *Bastin v. Fed. Nat. Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997) (affirming the lower court's denial of a motion for discovery based on no more than "rank speculation").

(ii) PRONG #2: ABUSE OF CORPORATE FORM.

Under the second prong of the test for piercing the corporate veil, a plaintiff must sufficiently allege facts showing that the corporate form was used to perpetrate fraud or wrong, or that equity and justice require disregarding the corporate entity. *See Estate of Raleigh,* 947 A.2d at 470. Here, perhaps most importantly, the Complaint does not (and cannot) allege that any fraud occurred, that Ms. Banks or Mr. Martin used the corporate form to perpetrate a wrong, or that justice and equity warrant piercing the corporate veil.

Apparently, the alleged injustice here is simply that without holding Defendants Banks or Martin personally liable, Plaintiff may not be able to recover from School of Smize if it were found liable for breach of contract. *See* Compl. at ¶ 77. This is not a legally cognizable "injustice." Quite the contrary, limited liability entities were created for the very purpose of promoting business

activity by protecting individuals from company debts. *See Labadie Coal Co. v. Black*, 672 F.2d 92, 96 (D.C. Cir. 1982) ("The common purpose of statutes providing limited shareholder liability is to offer a valuable incentive to business investment."); *See also Motir*, 191 F. Supp. 3d at 110 (recognizing the benefit and intention of "the legally distinct identities of a corporation and its [ ] owner[s]"). As such, "the formation of a company to avoid personal liability 'is not [itself] an abuse of the corporate form.'" *Winmar Constr., Inc. v. Kasemir*, 233 F. Supp. 3d 53, 64 (D.D.C. 2017) (quoting *Harris v. Wagshal*, 343 A.2d 283, 287 (D.C. 1975)). Or as the Delaware Chancery Court very recently synopsized:

> **Mere insolvency is not enough to allow piercing of the corporate veil**. To hold otherwise would sanction permitting a creditor to enter judgments against shareholders every time that a corporation becomes unable to pay its debts as they become due, **such that the limited liability characteristic of the corporate form would be meaningless**.

*PXP Producing Co. LLC v. MitEnergy Upstream LLC*, 342 A.3d 402, 418 n. 93 (Del. Ch. 2025) (citations and quotations omitted, cleaned up, emphasis supplied).

Upholding School of Smize's corporate form as an LLC would <u>not</u> promote injustice as Plaintiff contends. If Plaintiff wanted Ms. Banks or Mr. Martin to be personally liable for School of Smize's obligations under the Lease, Plaintiff could have required them to execute a personal guaranty – a fairly common device in commercial lease transactions. Instead, the Lease only required School of Smize to provide Plaintiff a "letter of credit" guaranty. *See* Lease at § 21.1. The Lease itself makes it clear that any legal or financial obligations under the Lease *belong only to School of Smize* as the Tenant thereunder. These were the terms the parties bargained for and which Plaintiff accepted.

To be sure, contrary to Plaintiff's repeated mischaracterizations seeking to cast School of Smize's Lease obligations as attributable to Defendants Banks and Martin personally,[13] only Plaintiff and School of Smize were parties to the Lease. To the extent School of Smize has any debts or liabilities arising from the Lease (it does not), they are debts of School of Smize alone, not personal debts of Defendants Banks or Martin. Had personal guaranties been required and executed, Plaintiff would have had a basis to seek personal liability from such guarantors. But none were required, and none were executed, so no personal liability exists.

At bottom, in attempting to pierce the corporate veil and impose alter ego liability on Ms. Banks and Mr. Martin, Plaintiff is wrongly trying to create a personal guaranty – a substantial contractual obligation – *for which Plaintiff did not bargain in the first instance*. This Court should be loath to create a personal guaranty after the fact when the parties did not bargain for one. The Lease and its bargained-for terms regarding liability and relief should dictate who should bear the risk of loss in the event of a breach of that Lease. In light of this, the potential inability to collect a potential debt from School of Smize that stems from the Lease does not create an injustice or inequity such that piercing the corporate veil is warranted. *See Vuitch*, 482 A.2d at 815–16 (explaining that considerations of who should bear the risk of loss are influential in determining whether to pierce the corporate veil); *see also Motir*, 191 F. Supp. 3d at 109-111 (dismissing veil-piercing claims because "all of the plaintiff's allegations of [the individual defendant]'s wrongdoing arise in direct connection with his performance of the corporate defendant's legitimate contract obligations."). For all these reasons, Count IV and Defendants Banks and Martin must be dismissed from this lawsuit as a matter of law.

---

[13] *See, e.g.,* Compl. at ¶ 12 (alleging Defendants Banks and Martin "deflected personal liability onto their company to avoid paying their debts"); ¶ 13 (alleging that Defendants Banks and Martin "repudiate[ed] their obligations" and "evade[d] their legal and financial responsibilities").

**D.    Count V of the Complaint Should Be Dismissed Because the Existence of the Lease Precludes an Implied Contract Claim.**

Count V of the Complaint is an implied contract claim pleaded in the alternative. *See* Compl. at ¶ 81. Although Plaintiff styles Count V as an unjust enrichment claim and alleges that "Defendants have been unjustly enriched[,]" *see* Compl. ¶¶ 80, 87, the allegations in Count V confusingly recite the elements of a quantum meruit claim. *Compare id.* ¶ 80, *with* ¶¶ 82-86.[14] In this instance, however, it does not matter which type of implied contract claim Plaintiff intended to assert because neither can proceed as a matter of law.

While it is true that, pursuant to Fed. R. Civ. P. 8(d)(2), pleading in the alternative is allowed in certain instances, Plaintiff's alternative pleading in Count V legally fails. "The District of Columbia recognizes causes of action for unjust enrichment and quantum meruit as implied contract claims in which there is <u>no express contract</u> between the parties but contractual obligations are implied, either in fact (quantum meruit) or in law (unjust enrichment)." *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 111 (D.D.C. 2010) (emphasis added). Because "unjust enrichment presuppose[s] that an express, enforceable contract is absent, District of Columbia courts generally prohibit litigants from asserting these claims when there is an express contract that governs the parties' conduct." *Id.* at 112; *see also Bloomgarden v. Coyer,* 479 F.2d 201, 210 (D.C. Cir.1973) ("There is, of course, no need to resort to [a quasi-contract] when the evidence sustains the

---

[14] "A party asserting a quantum meruit claim must demonstrate that the parties' conduct implied the existence of a contractual relationship by establishing: (1) valuable services rendered by the plaintiff, (2) for the person for whom recovery is sought; (3) which services were accepted and enjoyed by that person, and (4) under circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid. By contrast, a party asserting a claim for unjust enrichment must show that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 111 (D.D.C. 2010) (citations and internal quotation marks omitted).

existence of a true contract, either express or implied in fact.").  Similarly, "[c]laims for quantum meruit are also unavailable when there is an actual contract between the parties because there is no need to consider whether the parties' conduct implies a contractual relationship." *Id.*; *See also Ellipso, Inc. v. Mann,* 460 F.Supp. 2d 99, 104 (D.D.C. 2006) (discussing an action in quantum meruit and an unjust enrichment action and explaining that "[n]either form of restitution is available when there is an actual contract between the parties.").

Here, Count V should be dismissed as a matter of law because Plaintiff's allegations in support of its implied contract claim all rely on the Lease – an express written contract. Indeed, to the extent services or benefits were alleged in the Complaint, the services or benefits Plaintiff purportedly provided to School of Smize all were called for under the Lease. To the extent they were alleged to have been performed, they were performed pursuant to obligations contained in the Lease. There are no allegations in the Complaint regarding any relationship between Plaintiff and School of Smize (or any of the Defendants) other than the contractual relationship under the Lease. Similarly, to the extent that the Complaint alleges that School of Smize accepted the purported services or benefits purportedly provided by Plaintiff, those services or benefits were accepted pursuant to the Lease. The Complaint does not, and cannot, allege otherwise. Likewise, other than circumstances arising under Lease and the obligations contained therein, the Complaint is devoid of allegations regarding circumstances that purportedly justify Plaintiff's expectation that School of Smize would pay Plaintiff for anything.

At bottom, the allegations pertaining to Count V unquestionably involve promises, obligations, and rights stemming from the Lease. Plaintiff tacitly admits this in Count V by relying on the landlord-tenant relationship throughout its allegations contained in Count V. *See* Compl. ¶¶ 79-80, 83-87. Moreover, Plaintiff attached the Lease as Exhibit B to its Complaint, and

Defendants do <u>not</u> dispute the existence of a contract. To the contrary, as discussed *supra*, Defendants admit that the Lease is a written contract between Plaintiff and School of Smize, and Defendants' arguments herein rely on the Lease and the plain language contained therein.

Where, as here, an actual contract between parties exists, courts do not allow implied contract claims to proceed. *See, e.g., Plesha*, 725 F. Supp. 2d at 111-12 (dismissing implied contract claims due to the existence of an express written contract.); *Millennium Square Residential Ass'n v. 2200 M St. LLC*, 952 F. Supp. 2d 234, 251 (D.D.C. 2013) (same); *Ellipso, Inc.*, 460 F. Supp. 2d at 104-05 (same). To the extent Plaintiff is entitled to any recovery (it is not), Plaintiff must pursue such recovery under a breach of contract theory.  Accordingly, the Court should dismiss Count V.[15]

> **E.    Count VI of the Complaint and Plaintiff's Request for Declaratory Relief Should be Dismissed Because (i) a Claim for Declaratory Judgment Is Not Cognizable as a Separate Cause of Action, (ii) the Declaratory Relief Sought Here Would Serve No Useful Purpose, and (iii) Declaratory Relief Would Not Terminate the Controversy.**

"[C]ourts have broad discretion to decline to enter declaratory judgments." *Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 12 (D.D.C. 2010) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)).  Count VI and Plaintiff's requests for declaratory relief should be dismissed for several reasons.

---

[15] In any event, the Complaint fails to sufficiently plead either a quantum meruit or unjust enrichment claim because the Complaint lacks allegations regarding (i) what services or benefits Plaintiff purportedly provided to School of Smize – *other than those called for under the written Lease*; (ii) what services or benefits were purportedly accepted by School of Smize – *other than those allowed for under the written Lease*; and (iii) what circumstances purportedly justify the expectation that School of Smize (or any of Defendants) pay Plaintiff – *other than the circumstances set forth in the written Lease*. All other allegations regarding Count V are conclusory and merely parrot the elements of a claim for quantum meruit. *See* Compl. ¶¶ 79-87. Thus, the claim cannot proceed.

At the outset, Count VI is styled as a separate cause of action for declaratory judgment under 28 U.S.C. § 2201. It is well established, however, that "a count for a declaratory judgment 'is not cognizable as a separate cause of action, but is more properly included in the[ ] prayer for relief.'" *Bartlett v. Overslaugh*, 169 F. Supp. 3d 99, 110 (D.D.C. 2016) (quoting *Bridges v. Blue Cross & Blue Shield Ass'n,* 935 F. Supp. 37, 45 (D.D.C.1996)). Therefore, as an initial matter, Count VI must be dismissed as a matter of law because it is not a cognizable claim. *See, e.g., Bridges*, 935 F. Supp. at 45 (dismissing separate claim for declaratory judgment).

Furthermore, declaratory relief is generally appropriate only under two circumstances: (1) when it serves a useful purpose in clarifying legal relations, or (2) when it terminates and affords relief from uncertainty, insecurity, and controversy.  *Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 36 (D.D.C. 2016). Neither circumstance exists here.

Courts regularly dismiss declaratory judgment claims for lack of a useful purpose when those claims are duplicative or redundant of other claims. *See, e.g.*, *Bartlett*, 169 F. Supp. at 110 (dismissing claim for declaratory judgment because the claim was "wholly subsumed by its claim for breach of fiduciary duty and conversion"); *Boone,* 684 F.Supp. 2d at 12 (dismissing claim seeking a declaratory judgment that actions constituted protected activity under the False Claims Act, where False Claims Act claims were dismissed); *Walpin v. Corp. for Nat. & Cmty. Serv.*, 718 F. Supp. 2d 18, 24 (D.D.C. 2010) (dismissing declaratory judgment claim as "wholly subsumed" by claim for mandamus relief). Here, Plaintiff's claim for declaratory relief should be dismissed because it duplicates and/or is wholly subsumed by the claims in Counts I-IV of the Complaint.

Count I of the Complaint is a breach of contract claim asserting that School of Smize breached the Lease. *See* Compl. at ¶¶ 46-54. Count II is an anticipatory breach of contract claim asserting that School of Smize anticipatorily repudiated the Lease. *See* Compl. at ¶¶ 55-62.

Count III is purportedly an independent claim for breach of the implied covenant of good faith and

fair dealing. *See* Compl. ¶¶ 63-71. Count IV is purportedly an independent claim for piercing the

corporate veil and alter ego liability. *See* Compl. at ¶¶72-78. Count VI and Plaintiff's request for

declaratory relief in its "Prayer for Relief" seek a declaration that:

> (1) the Lease is valid and enforceable; (2) Defendants materially breached the Lease
> by failing to pay any rent, abandoning the Premises, admitting in writing Defendant
> Tenant's inability to pay its debts, and generally failing to perform the conditions
> of the Lease; (3) Landlord has not materially breached the Lease; (4) Defendants
> anticipatorily repudiated the Lease; (5) Defendants breached the implied covenant
> of good faith and fair dealing; and (6) Defendants Banks and Martin are personally
> liable as alter egos of Defendant Tenant.

Compl. ¶¶ 91 & 92.

Given the above, it is quite clear that Plaintiff's claim for declaratory relief is duplicative

of and wholly subsumed by the claims in Counts I-IV. Indeed, Plaintiff's requests (1), (2), and (3)

improperly attempt to utilize declaratory judgment as a means of establishing essential elements

of Plaintiff's breach of contract claim. Thus, the declaratory relief sought by those requests is

duplicative of and wholly subsumed by Count I, and will be rendered moot by the disposition of

Count I.  Similarly, Plaintiff's requests (4), (5) and (6) are identical to Plaintiff's claims in Counts

II, III and IV of the Complaint. Thus, the declaratory relief sought by those requests is similarly

duplicative of and wholly subsumed by Counts II-IV, and will be rendered moot by the disposition

of those claims.  Because all of the sought declaratory relief duplicates Plaintiff's claims in Counts

I-IV, Plaintiff's claims for declaratory relief serve no useful purpose and should be dismissed.

Additionally, declaratory judgment here serves no useful purpose here because Plaintiff's

requests for declaratory relief all involve *past* actions, not future conduct between the parties. *See*

Compl. ¶¶ 46-87. As this Court stated in *Glenn*:

> [T[he most useful purpose served by a declaratory judgment action is the
> clarification of legal duties *for the future* in order to avoid the accrual of damages

or a full-fledged breach of contract litigation. Traditionally, plaintiffs bring a declaratory judgment to determine the legality of a course of action the plaintiff wishes to propose and thereby allow parties to conform their *future* conduct to avoid litigation.

*Glenn*, 222 F. Supp. 3d at 36–37 (emphasis added) (citations omitted). It is clear from the allegations in the Complaint that the claims here are already ripe and that, therefore, the Court cannot offer any guidance via declaratory judgment that will change the situation between Plaintiff and Defendants in order to *avoid* litigation. Actually, the contrary would occur. Even if a declaration clarified *some* issues (such as whether the Lease is valid and enforceable or which party materially breached the Lease), any such declaration would undoubtedly ensure additional litigation to determine damages. This contravenes the whole reason declaratory judgments exist in the first instance.

Furthermore, declaratory judgment here would not terminate the controversy between Plaintiff and Defendants. "Where declaratory relief would cause a case to be tried piecemeal, or that only particular issues will be resolved without settling the entire controversy, a court should not exercise its discretion in favor of granting it." *Gibson v. Liberty Mut. Grp., Inc.,* 778 F.Supp.2d 75, 78 (D.D.C. 2011). This is because "it would not be prudent for [courts] to expend limited judicial resources to resolve issues which would not fully resolve the plaintiffs' claims." *Roth v. D.C. Courts,* 160 F.Supp.2d 104, 110 (D.D.C. 2001) (alteration added). As mentioned above, if the Court were to issue the declaratory relief Plaintiff seeks, the Court and the parties would still have to litigate the issue of damages. Thus, a declaration would not terminate the controversy between the parties. Rather, a declaration here would cause the case to be tried piecemeal and would imprudently result in substantial inefficiencies for Plaintiff, Defendants, and the Court.

In similar situations, courts regularly exercise their discretion to decline to hear requests for declaratory relief. *See, e.g.*, *Glenn*, 222 F. Supp. 3d at 36-38 (exercising its discretion in

declining to hear a declaratory action because it would serve no useful purpose and would instead ensure the sort of piecemeal litigation the Declaratory Judgment Act seeks to prevent); *Gibson*, 778 F. Supp. 2d at 80 ( "[t]he issues [the p]laintiffs seek declaratory judgment on are more appropriately resolved through the breach of contract claim. That claim, and only that claim, will completely resolve this dispute." (citation omitted)); *Roth*, 160 F. Supp. 2d at 110 (dismissing the plaintiffs' request for declaratory relief because it would "not result in the termination of litigation regarding this dispute between the parties[]"and noting that the plaintiffs could "raise all the issues present in this litigation through the District of Columbia's contracts dispute system for resolution of the merits.") The outcome should be the same here.

Accordingly, because a declaration here serves no useful purpose and the relief sought would result in the piecemeal litigation of the disputes between the parties, the Court should exercise its discretion to decline Plaintiff's request for declaratory judgment and dismiss Count VI of the Complaint.

[CONCLUSION ON NEXT PAGE]

**CONCLUSION**

For the reasons stated above, pursuant to Fed. R. Civ. P. 12 (b)(1), the Complaint should be dismissed for lack of subject matter jurisdiction. Alternatively, pursuant to Fed. R. Civ. P. 12(b)(6), the Complaint should be dismissed for failure to state a claim. To the extent the Court does not dismiss all Counts of the Complaint, the Court, at a minimum, should dismiss Defendants Banks and Martin from this action because, as a matter of law, the Complaint fails to sufficiently allege facts justifying the extraordinary measures of piercing the corporate veil or imposing personal liability on either Ms. Banks or Mr. Martin.

Respectfully submitted,

/s/    *Steven J. Willner*

Steven J. Willner (Bar No. 888230698)
Nicole M. Hardman (*Admission Pending*)
**NEUBERGER QUINN GIELEN**
**RUBIN & GIBBER, P.A.**
One South Street, 27th Floor
Baltimore, Maryland 21202
Telephone:    (410) 332-8550
Facsimile:    (410) 332-8594
sjw@nqgrg.com
nmh@nqgrg.com

*Attorneys for the Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 10th day of November 2025, a copy of the foregoing was served via ECF/CM upon all counsel of record.

/s/    *Steven J. Willner*

Steven J. Willner (Bar No. 888230698)