# EXHIBIT 1

**LEASE AGREEMENT**

**by and between**

**218 7TH ST SE LLC**

**("Landlord")**

**and**

**School of Smize LLC**

**("Tenant")**

**May 1, 2024**
**("Lease Commencement Date")**

**Premises:**
**218 7th Street, SE**
**Washington, D.C. 20003**

# AGREEMENT OF LEASE

THIS AGREEMENT OF LEASE ("Lease") made the ⬚ day of April , 2024, by and between 218 7TH ST SE LLC, a District of Columbia limited liability company, located at 218 7th St SE , (hereinafter referred to as the "Landlord") and School of Smize LLC, a Delaware limited liability company (hereinafter referred to as the "Tenant").

## WITNESSETH:

## ARTICLE I
### Basic Data

Section 1.1.    The following sets forth basic data hereinafter referred to in this Lease, and, where appropriate, constitute definitions of the terms hereinafter listed.

(a)    The Tenant:    School of Smize, a Delaware limited liability company.

Present Mailing Address of Tenant:
10960 Wilshire Blvd., 5th Floor
Los Angeles, CA 90024
Attention: Louis Martin

*With a copy to:*

Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Attention: Paul Bernstein

(b)    The Tenant's Trade Name: Smize Cream.

(c)    Lease Commencement Date: May 1, 2024.

(d)    Initial Term: For a period of One Hundred Twenty (120) full calendar months next succeeding the Lease Commencement Date, subject to earlier termination or extension as hereinafter provided.

(e)    Option Terms: Two (2) five (5) year terms.

2

(f)    Rent Commencement Date:  The date Nine (9) months following the Lease Commencement Date.

(g)    Minimum Rent:

(i) For and with respect to the first Twelve (12) month period commencing on the Rent Commencement Date, the Minimum Rent shall be at the rate of Twenty Thousand Dollars ($20,000.00) per month.

(ii)  Thereafter, the Minimum Rent shall be increased by three percent (3%) on the first twelve (12) month anniversary of the Rent Commencement Date and on each and every subsequent twelve (12) month anniversary thereof during the Initial Term.

(h)    Permitted Use:  Tenant shall operate the Premises as an ice cream restaurant and educational facility. Gambling, nude dancing or illegal activity is expressly prohibited anywhere on or about the Premises. No residential personal use and occupancy is permitted by any party within the Premises.

## ARTICLE II
## Premises

Section 2.1.    The Landlord hereby leases to Tenant and Tenant hereby leases from Landlord, upon and subject to the terms and provisions of this Lease, the premises (the "Premises") shown on Exhibit "A", being the real property in the District of Columbia referred to as 218 7th Street SE, Washington, DC 20003, including the land and all improvements located thereon.

## ARTICLE III
## Term of Lease and Options

Section 3.1.    Initial Term.  The term of this Lease (the "Initial Term") shall commence on the date provided in Section 1(c) (such date being referred to herein as the "Lease Commencement Date"), and shall end, unless sooner terminated as hereinafter provided, on the last day of the one hundred twentieth (120th) full calendar month following the Rent Commencement Date (as defined below) (such last day of the Initial Term being referred to herein as the "Expiration Date").  For purposes hereof, all references to the "Term" shall include the period from the Lease Commencement Date through the Expiration Date and, if applicable, following the timely and proper exercise of the Renewal Option(s), the "Renewal Term" (below

3

defined).  The term "Lease Year" as used in this Lease shall mean a period of twelve (12) consecutive months commencing on the Rent Commencement Date; provided, however, that if the Rent Commencement Date is not the first day of a month, then the first Lease Year shall end on the last day of the month in which the first anniversary of the Rent Commencement Date occurs, and each Lease Year thereafter shall be a twelve (12) month period commencing on the first day following the last day of the preceding Lease Year.  Promptly following determination by Landlord of the Rent Commencement Date, Tenant shall execute a certificate prepared by Landlord confirming such date within ten (10) days of written request.

Section 3.2.    Renewal Option(s).  Provided that (a) Tenant has not been in Default, as defined hereunder, at any time during the Initial Term, or the First Option Term if applicable, and (b) Tenant has not assigned its interest in this Lease and then is occupying for its own use the entire rentable area of the Premises, Tenant shall have the right and option, by giving notice as set forth below, to extend and renew the term of this Lease for two (2) terms of five (5) consecutive years, beginning on the day next following the expiration of the Initial Term and the First Option Term if applicable.  If this Lease has been terminated, or if Tenant does not timely exercise the applicable Renewal Option, then the renewal options shall lapse.  The renewal options shall be upon the same terms and conditions as contained in this Lease.  If Tenant desires to exercise a Renewal Option, Tenant shall give Landlord written notice (a "Renewal Notice") thereof at least six (6) months but not more than fifteen (15) months prior to the commencement of the applicable Option Term.

In the event Tenant wishes to exercise a Second Option Term, within ten (10) days following receipt of the Renewal Notice, Landlord shall advise Tenant in writing ("Renewal Rent Notice") of the proposed Second Option Rent, which shall be determined in accordance with Section 4.1.  If the Second Option Rent as designated by Landlord in accordance with the immediately preceding sentence is acceptable to Tenant, Tenant shall advise Landlord in writing thereof (the "Second Option Rent Acceptance") within ten (10) days following its receipt of the Renewal Rent Notice, time being of the essence.  If Tenant fails to reject Landlord's proposed Second Option Rent within such 10-day period by written notice delivered to Landlord, Tenant shall be deemed to have accepted the proposed Second Option Rent rate set forth in the Landlord's Renewal Rent Notice.  If Tenant timely rejects the Second Option Rent by written notice to Landlord and Landlord and Tenant fail to agree in writing to the Second Option Rent within thirty (30) days following the date of Landlord's Renewal Rent Notice, Tenant's Renewal Notice shall be deemed null and void, Tenant shall have no right to renew the Lease for the Second Renewal Term and the Lease shall expire at the expiration of the five (5) year First Renewal Term.  If either Landlord and Tenant agree on the Second Renewal Rent or Tenant is

4

deemed to have accepted the Second Option Rent, Tenant shall execute within ten (10) days following Landlord's written request a lease amendment confirming the extension of the Term for the Second Renewal Term and the rental rate during the Second Renewal Term.

Failure to execute such amendment following written acceptance by both parties of the Second Renewal Rent however shall not affect the extension of the Term to include the Second Renewal Term.

ARTICLE IV

Rent

Section 4.1.    Commencing at the Rent Commencement Date, as specified in Section 1.1(f) hereof, and continuing during the Term hereof, Tenant covenants to pay to Landlord monthly, without prior notice or demand therefor, and without any deductions or setoffs whatsoever, the Minimum Rent due for that month as set forth in Section 1.1(g) (the "Monthly Minimum Rent"). All installments of Monthly Minimum Rent due shall be payable to Landlord in advance, on or before the first day of each and every calendar month during the Term, with such first installment of Monthly Minimum Rent to be paid upon execution of this Lease.

Notwithstanding the foregoing, the parties agree that in lieu of any tenant improvement allowances, one-half (1/2) of the Monthly Minimum Rent shall be abated for the first four (4) months of the Initial Term following the Rent Commencement Date.

The Minimum Monthly Rent for the first twelve months of the First Option Term, if exercised, shall be one hundred and three percent (103%) of the Minimum Monthly Rent in effect at the end of the tenth (10th) year of the Initial Term. Thereafter, the Minimum Rent for the First Option Term shall be increased by three percent (3%) on the first twelve (12) month anniversary of the beginning of the First Option Term and on each and every subsequent twelve (12) month anniversary thereof during the First Option Term.

The Minimum Monthly Rent for the first twelve months of the Second Option Term, if exercised, shall be determined by the then fair market value not to exceed 110% of the Minimum Monthly Rent in effect at the end of the First Option Term (i.e. the fifteenth (15th) year). Thereafter, the Minimum Rent for the Second Option Term shall be increased by three percent (3%) on the first twelve (12) month anniversary of the beginning of the Second Option Term and on each and every subsequent twelve (12) month anniversary thereof during the Second Option Term.

Section 4.2.    The word "Rent" as used hereinafter by itself shall mean all monies which

5

may become due and payable under this Lease including Monthly Minimum Rent and Additional Rent (as defined hereinafter). The Monthly Minimum Rent and all Additional Rent shall be paid promptly when due, in lawful money of the United States, without notice or demand and without deduction, diminution, abatement (except as provided for herein), counterclaim or setoff of any amount or for any reason whatsoever, to Landlord at Landlord's address set forth in the Article hereof entitled "Notices" or at such other address or to such other person as Landlord may from time to time designate. If any check is mailed by Tenant, Tenant shall post such check in sufficient time prior to the date when payment is due so that such check will be received by Landlord on or before the date when payment is due. Tenant shall assume the risk of lateness or failure of delivery of the mails.

If, during the Term, Landlord receives two or more checks from Tenant which are returned by Tenant's bank for insufficient funds or are otherwise returned unpaid, Tenant agrees that all checks thereafter shall be either bank certified or bank cashier's checks. All bank service charges resulting from any bad checks shall be borne by Tenant. The Rent reserved under this Lease shall be the total of all Monthly Minimum Rent and Additional Rent, increased and adjusted as provided herein, payable during the entire Term and, accordingly, the methods of payment provided for herein, namely, annual and monthly rental payments, are for convenience only and are made on account of the total Rent reserved hereunder. Acceptance of partial Rent shall not waive Landlord's right to declare a default hereunder.

Section 4.3.    If Landlord does not receive all Rent within five (5) days of its due date, said Rent shall be delinquent and interest, as Additional Rent, shall accrue thereon at the rate of three percent (3%) per annum over the prime rate for commercial lending as announced from time to time by The Wall Street Journal ("Prime Rate") until the Rent and the accrued interest thereon is paid in full. In addition, if said Rent and all accrued interest thereon are not paid in full within ten (10) days after said Rent is due, Tenant agrees and covenants to pay, as Additional Rent, a late fee equal to five percent (5%) of the amount of any delinquent payment. Such payment shall be deemed liquidated damages and not a penalty, and shall not excuse the timely payment of Rent.

## ARTICLE V
### Tenant Improvements

Landlord shall have the right to review and approve, modify or deny all plans and

specifications prior to commencement of any work, provided that any such approval, modification or denial shall not be unreasonably withheld, conditioned, or delayed. Tenant is solely responsible for all costs associated with any Tenant Improvements, and once any Tenant Improvements are commenced, Tenant must diligently and continuously pursue their completion. All Tenant Improvements must be performed in a good and workmanlike manner and in compliance with all laws, rules, ordinances, and regulations (now or hereafter in effect) of all governmental agencies and authorities. Tenant acknowledges and agrees that any review by Landlord of Tenants plans and specifications and/or right of approval exercised by Landlord with respect to Tenants architect and/or contractor is for Landlord's benefit only and Landlord shall not, by virtue of such review or right of approval, be deemed to make any representation, warranty or acknowledgment to Tenant or to any other person or entity as to the adequacy of Tenants plans and specifications or as to the ability, capability or reputation of Tenants architect and/or contractor(s). Tenant, at Tenants sole cost and expense, shall ensure that any required insurance is in place at all times during construction of Tenant Improvements. Tenant shall be responsible to ensure that no mechanics (or similar) liens are placed on the Premises as a result of any Tenant Improvements. Unless Landlord requires otherwise, all Tenant Improvements shall remain with the Premises upon the termination of this Lease.

## ARTICLE VI
### Landlord Improvements

Landlord shall deliver the Premises in its "As-Is" condition, with all existing mechanical, electrical, and plumbing systems in good working order, and a minimum of 400 amps electrical service and a water line and drain stubbed to the rear of the first floor. The 2nd floor units and bathroom shall be delivered as is ready for finishes.

## ARTICLE VII
### Additional Rent

Section 7.1.    As used in this Lease, "Additional Rent" shall be and consist of all sums of money due hereunder except "Monthly Minimum Rent", including, without limitation, Real Estate Taxes (as hereinafter defined), Landlord's casualty insurance, late charges, costs, expenses, reasonable attorneys' fees as set forth in this Lease, and charges of any kind or amount whatsoever which Tenant assumes or agrees to pay or which become due and payable by Tenant to Landlord pursuant to this Lease. Unless otherwise stated herein, any Additional Rent obligations shall be paid prior to or with the next installment of Monthly Base Rent due hereunder, or, as to any non-recurring amount, within fifteen (15) days of presentment, if later.

7

Section 7.2.    For the purposes of this Lease, the following phrases shall have the meanings so indicated.

(a)    "Real Estate Taxes" is hereby defined to mean all taxes, including Business Improvement District taxes and assessments, and other charges, if any, general, special or otherwise, including all assessments for schools, public betterments and general or local improvements, levied or assessed upon or with respect to the ownership of and/or all other taxable interests in the Premises, land and improvements (or property located therein) imposed by any public or quasi-public authority having jurisdiction. Except for taxes, fees, charges and impositions described in the next sentence, Real Estate Taxes shall not include any inheritance, estate, succession, transfer, gift, franchise, corporation, income or profit tax or capital levy. If at any time during the Term the methods of taxation shall be altered so that in addition to or in lieu of or as a substitute for the whole or any part of any Real Estate Taxes levied, assessed or imposed there shall be levied, assessed or imposed (i) a tax, license fee, excise or other charge on the rents received by Landlord with respect to the Premises, or (ii) any other type of tax or other imposition in lieu of, or as a substitute for, or in addition to, the whole or any portion of any Real Estate Taxes, then the same shall be included as Real Estate Taxes for the purposes hereof. Promptly upon receipt of a tax bill from the District of Columbia, Landlord shall submit a true copy of the same to Tenant, which shall be conclusive evidence of the amount of taxes assessed or levied, as well as of the items taxed. Reasonable expenses, including attorneys' fees, expert witness fees and similar costs, incurred by Landlord in attempting to obtain a reduction of any Real Estate Taxes shall be added to and included in the amount of any such Real Estate Taxes, provided, however, that Landlord receives Tenant's written approval to incur such costs prior to commencing any efforts to obtain a reduction of any Real Estate Taxes, which consent shall not be unreasonably withheld, conditioned, or delayed. Real Estate Taxes which are being contested by Landlord shall nevertheless be included for purposes of the computation of the liability of Tenant hereunder provided, however, that if Landlord is successful in contesting any such taxes, then Landlord shall provide written notice of such to Tenant, and any excess Real Estate Taxes paid by Tenant shall be applied as a credit toward the next installments of Real Estate Taxes due. Landlord shall have no obligation to contest, object to or litigate the levying or imposition of any Real Estate Taxes; provided Tenant, shall have the rights, at no cost or expense to Landlord, to contest any Real Estate Taxes, and Landlord shall provide Tenant with notice of assessments upon receipt in order to provide Tenant sufficient time to contest any proposed new assessment. Tenant may also maintain any necessary legal action in reference to such taxes or for the recovery of any taxes paid, provided that Tenant has first obtained Landlord's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. Landlord

8

shall execute any documents reasonably required by Tenant in connection with any such contest. Landlord shall provide Tenant with copies of all notices concerning the real estate tax status of the Premises.

Section 7.3.    Tenant shall pay all taxes which may be lawfully charged, assessed, or imposed upon all fixtures and equipment of every type and also upon all personal property in the Premises, and Tenant shall pay all license fees and other charges which may lawfully be imposed upon the business of Tenant conducted upon the Premises.

## ARTICLE VIII
### Payment of Additional Rent

Section 8.1.    Starting from the first anniversary from the Lease Commencement Date, Tenant shall pay on a monthly basis as Additional Rent, One Hundred percent (100%) of all increases over the 2024 base year of the Real Estate Taxes assessed against the Premises as well as Landlord's property casualty insurance for the Premises.  For purposes of this Article VIII, the 2024 base year figures are as follows:

> 2024 Real Property Taxes are $53,608 per annum
> 2024 BID Taxes are $3,655.16 per annum
> 2024 Insurance are estimated to be $6,000 per annum.

## ARTICLE IX
### Utilities

Section 9.1.    Starting from the Commencement Date, Tenant shall arrange and pay directly to the respective utility company, all utilities for the Premises, including, but not limited to, water, electricity, gas, sewer charges, cable, telephone and the like, including all utilities necessary for heating and air conditioning its premises.

Section 9.2.    Under no circumstances shall Landlord be liable to Tenant or anyone claiming by or through Tenant for loss or damage to person or property or interruption to Tenant's business if any service to the Premises, whether provided by the Landlord or otherwise, is interrupted or terminated, nor shall any such interruption or termination be construed as an eviction (actual or constructive) of Tenant, nor work an abatement of any Rent nor relieve Tenant from fulfillment of any covenant or condition of this Lease, unless such interruption is caused by the gross negligence or willful misconduct of Landlord.  Notwithstanding the

foregoing, in the event there is an interruption in the provision of any such service to the Premises for more than fifteen (15) consecutive days after Tenant has notified Landlord of which Tenant has received written notice, which interruption materially adversely affects Tenant's ability to conduct its business at the Premises and Tenant no longer conducts its business in the Premises, and such interruption is not due to Force Majeure or the fault of Tenant, Tenant shall thereafter be entitled to an abatement of Monthly Minimum Rent for the duration of such interruption.

ARTICLE X

Use of Premises

Section 10.1.  The Premises during the term of this Lease shall be used and occupied by the Tenant solely for the purposes specified as the use thereof in Section 1.1(i) of this Lease, and for no other purpose or purposes, absent the Landlord's prior written consent, not to be unreasonably withheld or conditioned.  Tenant shall use and occupy the Premises in accordance with all federal, state and municipal laws, statutes, ordinances, building codes, orders, rules, regulations and requirements of all federal, state and municipal governments and the appropriate agencies, offices, departments, and the boards and commissions thereof, and the board of fire underwriters and/or the fire insurance rating organization or similar organization performing the same or similar functions, whether now or hereafter in force, applicable to the Premises.

Section 10.2.  The Tenant further agrees to conform to all of the following provisions during the entire term of this Lease or any Option Term thereafter:

(a)    No auction, fire, going out of business sale, "lost our lease", or bankruptcy sales may be conducted within the Premises without the previous written consent of the Landlord.

(b)    Any use of sidewalks or public space adjacent to the Premises must be done in strict compliance with all applicable laws and regulations and with proper permitting.

(c)    Tenant acknowledges and agrees that, Tenant shall, at its sole cost and expense, arrange for adequate trash removal by a reputable contractor. If Tenant fails so to pay for trash removal, Landlord shall have the same remedies (even if such payment is due to such contractor and not to the Landlord) as Landlord has for nonpayment of rent hereunder.

10

(d)    No sign, advertisement, window display or notice shall be inscribed, printed, affixed or displayed on any part of the outside or the inside of the Premises except as approved in writing in advance by Landlord, which approval shall not be unreasonably withheld, and then only as permitted by the laws and regulations of the District of Columbia. If any such signs, displays, advertisements or notices are improperly exhibited, Landlord shall have the right to remove the same, and Tenant shall be liable for any and all expenses incurred by Landlord relative to said removal. Any permitted sign, advertisement, window display or notice, including directories and name plates, shall be at the sole expense and cost of Tenant. The Tenant shall at its expense (a) maintain in good order and repair each sign placed by the Tenant anywhere within the Premises, and (b) at the earlier of the expiration or termination of this Lease or the Tenant's surrender or abandonment of possession of the Premises, immediately remove each such sign and restore and repair any damage to the Premises occasioned by the installation, maintenance or removal of any such sign (which obligation shall survive the expiration or termination of this Lease).

(e)    Tenant shall not perform any act or carry on any practice which may injure the Premises, or (taking into account the intended use of the Premises) cause any offensive odor or loud noise which may constitute a nuisance or menace to any other persons or business in the area, and in no event shall any offensive or obnoxious noises or odors be emitted from the Premises, it being understood that none of the regular odors associated with Tenant's Permitted Use shall be deemed offensive or constituting a nuisance or menace. The Tenant shall contract with a licensed pest control company for regular pest inspections and extermination services to be provided at the Premises and not less than once every forty-five (45) days.

(f)    Tenant shall take all actions necessary, at Tenant's sole expense, to ensure that the Premises is adequately secured at all times against break-in, theft and vandalism.

(g)    Tenant shall at all times fully and adequately heat and/or air-condition (as the circumstances require) the Premises.

(h)    The Tenant shall not use, handle or store or dispose of any oil, hazardous or toxic materials or hazardous or toxic wastes (collectively, "hazardous materials") in or about the Premises. If the transportation, storage, use or disposal of any

11

hazardous materials anywhere in the Premises in connection with the Tenant's use of the Premises results in (1) contamination of the soil or surface or ground water or (2) loss or damage to person(s) or property, then Tenant agrees to respond in accordance with the following paragraph:

Tenant agrees (i) to notify Landlord immediately of any contamination, claim of contamination, loss or damage, (ii) after consultation and approval by Landlord, to clean up the contamination in full compliance with all applicable statutes, regulations and standards, and (iii) to indemnify, defend and hold Landlord harmless from and against any claims, suits, causes of action, costs and fees, including attorney's fees, arising from or connected with any such contamination, claim of contamination, loss or damage. This provision shall survive the termination of this lease. No consent or approval of Landlord shall in any way be construed as imposing upon Landlord any liability for the means, methods, or manner of removal, containment or other compliance with applicable law for and with respect to the foregoing.

Tenant shall immediately notify Landlord upon Tenant's receipt of any inquiry, notice, or thereat to give notice by any governmental authority or any other third party with respect to any hazardous materials.

(i)     Tenant agrees that, within the Premises, it shall be responsible for compliance with the Americans with Disabilities Act (42 U.S.C. ß 12101 et. seq.) and the regulations and Accessibility Guidelines for Buildings and Facilities issued pursuant thereto.

ARTICLE XI
Limitation of Liability

12

Section 11.1.  Except with respect to any damages resulting from the willful or grossly negligent act or omission of Landlord, its agents and employees, Landlord shall not be liable to Tenant, its employees, agents, business invitees, licensees, customers, guests, or trespassers for any damage or loss to the property of Tenant (or any interruption to the business of Tenant) or others located on or about the Premises or for any accident or injury to persons on or about the Premises resulting from any act, omission or occurrence whatsoever, including, but not limited to: the necessity of repairing any portion of the Premises; the use or operation (by Tenant or any other person or persons) of any elevators, heating, cooling, electrical or plumbing equipment or apparatus; the termination of this Lease by reason of the destruction of the Premises; any fire, robbery, theft and/or any other casualty; any leaking in any part or portion of the Premises; any water, wind, rain or snow that may leak into, or flow from, any part of the Premises; any acts or omissions of any occupant of any space adjacent to or adjoining all or any part of the Premises; any water, gas, steam, fire, explosion, electricity or falling plaster; the bursting, stoppage or leakage of any pipes, sewer pipes, drains, conduits, ducts, appliances or plumbing works; the functioning or malfunctioning of the fire sprinkler system; the functioning or malfunctioning of any security system installed in the Premises or any part thereof; Force Majeure; or any other cause whatsoever by itself or in connection with any of the foregoing. Notwithstanding any other provision of this Lease to the contrary, in no event shall Landlord be liable for any loss of business of or business interruption to Tenant caused by Landlord's breach of its obligations under this Agreement.

Section 11.2    Landlord shall not (i) be required to perform any of its obligations under any provision of this Lease, or (ii) be liable for loss, damage or penalty (whether or not expressly set forth herein) for failure to do so, and Tenant shall not be released from any of its obligations under this Lease because of the Landlord's failure to perform, where such failure results from Force Majeure. If Landlord is so delayed or prevented from performing any of its obligations during the Term, the period of such delay or such prevention shall be deemed added to the time herein provided for the performance of any such obligation, and the period of such delay shall be added to the Term on a day-for-day basis.

Section 11.3.  Notwithstanding any provision herein to the contrary, Tenant shall look solely to the estate and property of Landlord in and to the Premises in the event of any claim against Landlord arising out of or in connection with this Lease, the relationship of Landlord and Tenant, or Tenant's use of the Premises, and Tenant agrees that the liability of Landlord arising out of or in connection with this Lease, the relationship of Landlord and Tenant, or Tenant's use of the Premises shall be limited to such estate and property of Landlord. No other properties or

13

assets of Landlord shall be subject to levy, execution or other enforcement procedures for the satisfaction of any judgment (or any other judicial process) or for the satisfaction of any other remedy of Tenant arising out of or in connection with the Lease, the relationship of Landlord and Tenant or Tenant's use of the Premises, and if Tenant shall acquire a lien on or interest in any other properties or assets by judgment or otherwise, Tenant shall promptly release such lien on or interest in such other properties and assets by executing, acknowledging and delivering to Landlord an instrument to that effect prepared by Tenant's attorneys. The foregoing provisions of this subsection shall run to the benefit of the Landlord, its successors, assigns and mortgagees.

ARTICLE XII
Maintenance of Building, Etc.

Section 12.1. Subject to the provisions of Article VI, Tenant accepts the Premises in "as is – where is" condition as of the Commencement Date and acknowledges that Landlord has no obligation to make any repairs, improvements, modifications, or alterations whatsoever to the Premises except as may be otherwise expressly stated herein.

Section 12.2 Landlord agrees to keep in good order, condition, and repair the roof, exterior walls, foundations and structural portions of the Premises to the extent, but only to the extent, originally constructed (which for purposes hereof includes the then existing condition upon original delivery of possession) by Landlord (except glass and glass windows and doors and the so-called storefront, irrespective of which party installed the same), except for any damage thereto caused by any act or negligence of Tenant, its employees, agents, licensees, invitees, or contractors.

Section 12.3. Except as specifically herein otherwise provided, Tenant agrees that from the Commencement Date, and continuously thereafter until the end of the term hereof, it will keep neat and clean and maintain in good order, condition and repair, the Premises and every part thereof, including, without limitation, the storefront and the exterior and interior portions of all doors, windows, plate glass and showcases surrounding the Premises, all plumbing and sewage facilities within and exclusively serving the Premises, fixtures and interior walls, floors, ceilings, signs (including exterior signs where permitted), and all wiring, electrical systems, interior building appliances, HVAC systems and equipment and similar equipment. Tenant shall, at Tenant's expense, repaint the Premises and any part and portion thereof from time to time to assure that the same are kept in a first-class, tenantable, and attractive condition throughout the term including any option term of this Lease. There is excepted from this paragraph, however, such damage as Landlord is required to repair pursuant to ARTICLE XVI hereof. If, within

14

thirty (30) days of written notice from Landlord, Tenant shall not commence and diligently prosecute to completion any repairing, refurbishing or remodeling of the exterior of the Premises as required by Landlord and identified in said notice, Landlord shall have the right, but not the obligation, to perform such work on behalf of Tenant and Tenant shall reimburse Landlord promptly for the costs thereof. Failure of Tenant to reimburse Landlord for any such amounts shall constitute an event of default by Tenant hereunder, entitling the Landlord to exercise any remedies available to it pursuant to Article XIX hereof.

Section 12.3. Tenant further agrees that the Premises and all furniture, fixtures and equipment therein, and all surrounding areas shall be kept in a clean, sanitary and safe condition and shall in all respects comply with the laws and regulations of the United States of America and the District of Columbia, and in accordance with all directions, rules, and regulations of the Health Inspector, Fire Marshal, Building Inspector, and other proper officers of the governmental agencies having jurisdiction thereover. Tenant further agrees that in the event that Tenant is not in compliance, including, without limitation, any deficiencies or violations, with all applicable laws and regulations of the United States of America and the District of Columbia, and in accordance with all directions, rules, and regulations of the Health Inspector, Fire Marshal, Building Inspector, and other proper officers of the governmental agencies having jurisdiction thereover, Tenant shall cease its business operations, if so ordered, and promptly make such repairs and/or renovations to comply with said laws, statutes, ordinances, rules, directions and/or regulations and shall not resume business operations until it receives the approval of the applicable officers of the governmental agencies having jurisdiction thereof.

Section 12.4. Tenant shall not make any material alterations, improvements and/or additions to the Premises without first obtaining, in each instance, the written consent of Landlord, which consent shall not be unreasonably withheld, delayed or conditioned to the extent any such alteration, additions or improvements are consistent with the permitted uses and do not diminish the value of the Premises in a material manner. In the event Landlord consents to any alterations, improvements and/or additions to the Premises, such alterations shall be made in accordance with all applicable laws and in good and first-class, workmanlike manner and in accordance with this Lease. Any and all alterations, additions, improvements, and fixtures which may be made or installed by either Landlord or Tenant upon the Premises and which in any manner are attached to the floors, walls or ceilings (including, without limitation, any linoleum or other floor covering of similar character which may be cemented or otherwise adhesively affixed to the floor, and any heating, ventilating and/or air-conditioning equipment) shall remain upon the Premises, and at the termination of this Lease shall be surrendered with the Premises as

15

a part thereof without disturbance, molestation or injury. However, the usual trade fixtures, equipment and furniture which may be installed in the Premises prior to or during the term hereof at the cost of Tenant may be removed by Tenant from the Premises upon the termination of this Lease. Further, Tenant covenants and agrees, at its own cost and expense, to repair any and all damage to the Premises resulting from or caused by such removal. In no event shall Tenant be entitled to remove any heating, ventilating, or air conditioning equipment.

Section 12.5. Tenant shall be responsible for the repair and maintenance of all improvements (whether structural, mechanical, electrical, plumbing or otherwise) made by Tenant on or about the Premises.

ARTICLE XIII

Indemnity and Public Liability Insurance

Section 13.1. Tenant agrees to indemnify and save harmless Landlord, its managing agent and any holder of a mortgage on all or any portion of the Premises, from and against all claims of whatever nature arising from any act, omission or negligence of Tenant, or Tenant's contractors, licensees, agents, servants, or employees, or arising from any accident, injury, or damage whatsoever caused to any person, or to the property of any person, or from any violation of applicable law, including, without limitation, any law, regulation, or ordinance concerning trash, hazardous materials or other pollutant occurring from and after the date that possession of the Premises is delivered to Tenant and until the end of the term hereof, in or about the Premises or arising from any accident, injury or damage occurring outside of the Premises but within or in the vicinity of the Premises where such accident, damage or injury results or is claimed to have resulted from an act or omission on the part of Tenant or Tenant's agents or employees and not the acts or omissions of Landlord. This indemnity and hold harmless agreement shall include indemnity against all costs, expenses, liabilities and reasonable attorney's fees incurred or paid by Landlord in or in connection with any such claim or proceeding brought thereon, and the defense thereof, including any damages, award, verdict or judgment that may be awarded against landlord therein. Notwithstanding anything herein to the contrary, the foregoing indemnity shall not apply to any claim against an indemnified party resulting from such party's gross negligence or willful misconduct.

Section 13.2. Tenant agrees to maintain in full force during the term hereof, including any extension thereof, a policy of commercial general liability insurance (or the then successor equivalent from time to time) that, if applicable, includes special provision coverage in the broadest available form for so-called liquor law liability (sometimes also known as "dram shop" insurance), which liquor law liability policy or policies shall insure the Tenant and the Landlord

16

(disclosed or undisclosed), and all those claiming by, through or under the Landlord, adequately in the Landlord's good faith judgment, against any and all claims, demands or actions for personal and bodily injury to, or death of, one person or multiple persons in one or more accidents, and for damage to property, as well as for damages due to loss of means of support, loss of consortium, and the like, including, without limitation, any claims mentioned in Section 22.29(C) hereof. The commercial general liability insurance required to be maintained by the Tenant hereunder, including the liquor law liability special provision coverage, shall be without any so-called employee exclusions or the like, and also shall be in the broadest with the most comprehensive from then generally available from time to time, under which Landlord (and such other persons as are in privity of the estate with Landlord as may be set out in notice from time to time) is named as additional insured on a primary basis and the Tenant is named primary insured, and under which the insurer agrees to indemnify and hold Landlord and those in privity of estate with Landlord harmless from and against all cost, expense and/or liability arising out of or based upon any and all claims, accidents, injuries, and damages mentioned in Section 13.1 and 13.2 of this ARTICLE XIII and Section 22.29(C) of ARTICLE XXII herein. Each such policy shall be written by a reputable and financially sound, duly licensed, insurance company and non-cancelable with respect to Landlord and Landlord's said designees without thirty (30) days' prior written notice to Landlord, and a duplicate original or certificate thereof shall be delivered to Landlord. The minimum limits of liability of such insurance shall be $1,000,000.00 for each occurrence and $2,000,000.00 for general aggregate limit, or such higher limits as the Landlord may from time-to-time reasonably request, provided such higher limits are then customarily carried on such establishments in the geographic area by tenants similarly situated. Tenant shall be entitled to carry so-called "umbrella coverage" to satisfy the provisions of this ARTICLE XIII provided the coverage allocated to the Premises satisfies the minimum limits of liability set forth in the immediately preceding sentence and does not, in any other material fashion, diminish or weaken the insurance coverage required to be carried by Tenant hereunder.

Section 13.3. Tenant agrees to use and occupy the Premises at its own risk; and that Landlord shall have no responsibility or liability for any loss of or damage to Tenant's leasehold improvements or to fixtures or other personal property of Tenant or those claiming by, through or under Tenant, unless caused by the gross negligence or willful misconduct of Landlord. The provisions of this Section shall apply during the whole of the term hereof.

Section 13.4. Tenant agrees that Landlord shall not be responsible or liable to Tenant or to those claiming by, through or under Tenant, for any loss or damage that may be occasioned by or through the acts or omissions of persons occupying adjoining premises or any part of the premises adjacent to or connecting with the Premises or any of the buildings in the area, or

otherwise, or for any loss or damage resulting to Tenant or those claiming by, through or under Tenant, or its or their property, from the bursting, stopping or leaking of water, gas sprinkler, sewer or steam pipes.

Section 13.5. The foregoing provisions of this ARTICLE XIII (as well as any other provisions dealing with indemnity and the like by Tenant or Landlord) shall be deemed to be modified in each case by the insertion in the appropriate place of the language: "Except as otherwise provided by applicable law".

ARTICLE XIV

Landlord's Access to Premises

Section 14.1. Landlord or its agent may, upon at least 48 hours' written notice, during any reasonable time or times, enter upon the Premises, any portion thereof or any appurtenance thereto (with men and materials, if required) for the purpose of: (i) inspecting the Premises; (ii) making such repairs, replacements or alterations which it may be required to perform under the provisions of this Lease, provided any such repairs shall be coordinated with Tenant to minimize interference with its business; and
(iii) showing the Premises to prospective purchasers, or existing or potential equity partners or mortgagees of Landlord. Landlord agrees to give reasonable 48 hours' written notice under the circumstances prior to any such entry except that Landlord may enter without notice in the case of an emergency. In making such entry, Landlord agrees to use reasonable efforts to avoid interfering with the regular and usual conduct of Tenant's business and shall have no liability for entering the Premises.

Section 14.2. For a period commencing six (6) months prior to the termination of this Lease, Landlord may have reasonable access to the Premises for the purpose of exhibiting the same to prospective tenants.

ARTICLE XV

Insurance

Section 15.1. Tenant will not conduct or permit to be conducted any activity or place any equipment in or about the Premises which will, in any way, increase the rate of insurance premiums on the Building and if any increase in the rate of insurance is stated by any insurance company or by the applicable Insurance Rating Bureau to be due to any activity or equipment in

18

or about the Premises, such statement shall be conclusive evidence that the increase in such rate is due to such activity or equipment, and Tenant shall be liable for such increase and shall reimburse Landlord upon demand therefor, as Additional Rent.

Section 15.2. Tenant covenants and agrees that from and after the date of tender of delivery of the Premises from Landlord to Tenant, Tenant will carry and maintain, at its sole cost and expense and in the amounts specified and in the form hereinafter provided, the following types of insurance through the expiration of the Term:

(i)    a general comprehensive liability insurance policy or policies covering the Premises and Tenant's use thereof against claims for bodily injury, including death, and property damage occurring upon, in, or about the Premises, such insurance to be written in the amount of at least $1,000,000 Combined Single Limit per occurrence with a $2,000,000.00 annual aggregate in respect of bodily injury, including death, and property damage; and the foregoing amount may be increased by Landlord in its reasonable determination. Such insurance shall include Landlord, its management agent and any mortgagee of the Property as additional named insured and loss payees.

(ii)    a property insurance policy or policies covering all of the items included in Tenant's leasehold improvements, trade fixtures and personal property from time to time in, on, or upon the Premises and any Alterations made by Tenant thereto in an amount equal to their full replacement cost at the time of any loss. Such insurance-shall name Landlord, its management agent and any mortgagee of the Premises as additional insured and loss payees.

(iii)    a Workmen's Compensation policy covering all of Tenant's employees with minimum limits as required by law.

The insurance described in clause (ii) above shall be written on an all-risk basis and any policy proceeds from such insurance shall be used by Tenant only for the repair, reconstruction, restoration, or replacement of the property damaged or destroyed. Tenant hereby agrees to obtain from its insurer a waiver of any right of subrogation against Landlord on account of any loss or damage to Tenant's property in or upon the Premises. All insurance policies required of Tenant hereunder shall be issued by an insurance company licensed to do business in the District of Columbia and shall have a Best's rating of "All" or better. Certificates evidencing such insurance shall be delivered to Landlord by Tenant within thirty (30) days after the execution of this Lease and thereafter, prior to the scheduled expiration of any policy and copies of the policies shall be made available promptly upon request by Landlord. All insurance policies shall

19

be written as primary policy coverage and not contributing with or in excess of any coverage carried by Landlord, and said policies shall have such form and content as shall be approved by Landlord. Each and every insurance policy required to be carried hereunder by Tenant shall provide that such insurance policy shall not be canceled or materially changed without obtaining Landlord's prior written consent which may be withheld in Landlord's sole discretion. In the event Tenant shall fail to provide such insurance, or shall fail to pay the premiums therefor when due, Landlord shall have the right (but not the obligation) to cause such insurance to be issued and to pay the premiums therefor, or any premiums in default, and to collect same as Additional Rent hereunder.

ARTICLE XVI

Damage Clause

Section 16.1. If the Premises or any part thereof shall be damaged by fire or any other cause ("collectively, a "Casualty"), Tenant shall give prompt notice thereof to Landlord. Not later than sixty (60) days following the occurrence of any such Casualty, the Landlord shall provide written notice to the Tenant as to whether (or not) Landlord will restore the Premises for the Tenant's continued usage (the "Restoration Notice") and, if so, such written notice shall inform Tenant of the anticipated completion date of such restoration; provided, however, that if the anticipated completion date set forth in the Restoration Notice is later than the one hundred eightieth (180th) day following such Casualty, than the Tenant shall have the right to terminate this Lease by giving written notice thereof to Landlord.

Section 16.2. If restoration of the Premises is possible in accordance with Landlord's reasonable estimate, within a period of six (6) months from the date of the damage, or, if later, three (3) months after the issuance of building permits for the reconstruction: (i) Landlord shall restore the Premises at Landlord's expense up to the limit of insurance proceeds received subject to any prior rights of any mortgagee to such proceeds (provided, however, that Landlord shall have no obligation to repair damage to or replace Tenant's personal property, any Tenant Alterations or any other property located in the Premises); and (ii) if the Premises are untenantable for Tenant's permitted use, in whole or in part, during such restoration, the Monthly Minimum Rent and Additional Rent hereunder shall be abated proportionately to the extent and for the period of such untenantability, that is, the Rent abated shall be that portion which the amount of square foot area which is unusable bears to the total square foot area of the Premises. To the extent more than 50% of the square foot area of the Premises is rendered unusable, Rent shall be abated in its entirety during the period of such untenantability. If the Premises are untenantable for any period of time, Tenant may, at Tenant's sole election, opt to extend the

20

Term on a day-for-day basis for the length of the period of untenabtability. If such damage or destruction shall result from the fault of Tenant, or Tenant's agents, employees, visitors or licensees, Tenant shall not be entitled to any abatement of Monthly Minimum Rent and Additional Rent.

Section 16.3.  If restoration is not possible, in accordance with Landlord's reasonable estimate or the Landlord has not delivered its restoration estimate, within the periods set forth above, Landlord or Tenant shall have the right to terminate this Lease by giving written notice thereof to the other within ninety (90) days after the occurrence of such damage, in which event this Lease and the tenancy hereunder, shall terminate as of the date specified in such notice, which date shall be no later than one hundred twenty (120) days after the occurrence of such damage.

Section 16.4.  Except as provided herein, no compensation or claim or diminution of rent will be allowed or paid by Landlord by reason of inconvenience, annoyance or injury to business, arising from the necessity of repairing any portion of the Premises, however the necessity may occur, as determined in the sole discretion of Landlord.  Landlord shall have no obligation to replace or repair Tenant's personal property.  Nothing in this Article XVI shall create an extension of the Lease term.

ARTICLE XVII

Condemnation

Section 17.1.  If the Premises or any part thereof shall be taken or threatened to be taken by any governmental or quasi-governmental authority pursuant to the power of eminent domain, or by deed in lieu thereof, Tenant agrees to make no claim for compensation in the proceedings, and hereby assigns to Landlord any rights which Tenant may have to any portion of any award made as a result of any such taking, and this Lease shall terminate as to the portion of the Premises actually taken by the condemning authority and Monthly Minimum Rent and Additional Rent shall be adjusted to such date.  The foregoing notwithstanding, Tenant shall be entitled to claim in the condemnation proceedings, such awards as may be allowed for its relocation expenses and for movable trade fixtures installed by it which shall not, under the terms of this Lease, be or become the property of Landlord at the termination or expiration hereof, but only if such awards shall be made by the condemnation court in addition to and stated separately from the award made by it for the Premises or part thereof so taken.  In no event shall Tenant be entitled to any award for the unexpired portion of the Term of this Lease.

Section 17.2. If the nature, location or extent of any proposed condemnation affecting the Property is such that Landlord elects to demolish all or a portion of the Premises, then Landlord may terminate this Lease by giving at least sixty (60) days written notice of termination to Tenant at any time after such condemnation and this Lease shall terminate on the date specified in such notice. Monthly Minimum Rent and Additional Rent shall be adjusted to such date.

ARTICLE XVIII

Bankruptcy or Insolvency

Section 18.1. If the Tenant shall become a debtor under the United States Bankruptcy Code, 11 U.S.C.§101 et seq. (the "Bankruptcy Code") then, to the extent that the Bankruptcy Code may be applicable or affect the provisions of this Lease, the following provisions shall also be applicable. If the trustee or debtor-in-possession shall fail to elect to assume this Lease within sixty (60) days after the commencement of a case under the Bankruptcy Code, this Lease shall be deemed to have been rejected; and the Landlord shall be thereafter immediately entitled to possession of the Premises and this Lease shall be terminated subject to and in accordance with the provisions of this Lease and of law (including such provisions for damages). No election to assume (and, if applicable to assign) this Lease by the trustee or debtor-in-possession shall be permitted or effective unless: (i) all defaults shall have been cured and the Landlord shall have been provided with adequate assurances reasonably satisfactory to the Landlord, including (a) any reasonably required guaranties and/or security deposits, and (b) any other reasonably required assurances that there will continue to be sufficient funds and personnel available to professionally merchandise, stock, promote, staff and operate the Premises in strict compliance with all provisions of this Lease; and (ii) neither such assumption nor the operation of the Premises subsequent thereto shall, in the Landlord's reasonable judgment, cause or result in any breach or other violation of any provision of this or any applicable lease, mortgage or other contract, or disrupt the tenant mix of the Property; and (iii) the assumption and, if applicable, the assignment of this Lease satisfies in full the provisions of the Bankruptcy Code, including, without limitation, Sections 365(b)(1) and (3) and (f)(2); and (iv) the assumption has been ratified and approved by order of such court or courts as have final jurisdiction over the Bankruptcy Code and the case. No assignment of this Lease by the trustee or debtor-in-possession shall be permitted or effective unless the proposed assignee likewise shall have satisfied (i), (ii), (iii) and (iv) regarding such assignment, shall, without limitation, be subject to the provisions of this Lease. When pursuant to the Bankruptcy Code the trustee or debtor-in-possession is obligated to pay reasonable use and occupancy charges, such charges shall not be less than the minimum rent and other charges specified herein to be payable by the Tenant. Neither the Tenant's interest or estate in the Premises herein or created hereby nor any lesser

22

interest or estate of the Tenant shall pass to anyone under any law of any state or jurisdiction without the prior written consent of the Landlord.  In no event shall this Lease, if the term hereof has expired or has been terminated in accordance with the provisions of this Lease, be revived, and no stay or other proceedings shall nullify, postpone or otherwise affect the expiration or earlier termination of the term of this Lease pursuant to the provisions of this Article XVIII or prevent the Landlord from regaining possession of the Premises.

ARTICLE XIX
Landlord's Remedies

Section 19.1. Any of the following occurrences or acts shall constitute an event of default ("Event of Default") under this Lease:

(A)    If Tenant shall fail to pay any Monthly Minimum Rent or any Additional Rent within five (5) days after the date when the same shall become due and payable, although no demand shall have been made for the same; or

(B)    If Tenant shall fail to observe or perform any of the covenants, conditions and agreements of this Lease (other than as specified in Sections 19.1(A), 19.1(C) through (G), 22.18 and 22.28) and such failure shall continue for a period of fifteen (15) days after written notice to Tenant of such failure; provided, however, that if such failure is not reasonably capable of being cured within such fifteen (15) day period, then so long as Tenant has commenced curative action within such period and thereafter continues to pursue diligently such curative action, such fifteen (15) day period shall be extended for the period necessary to cure such default, but not more than sixty (60) additional days, inclusive of the original fifteen (15) day period; or

(C)    If Tenant shall fail, within five (5) days after written notice by Landlord, to restore any deficiency in the amount of the Security Deposit; or

(D)    If Tenant fails to take possession of the Premises on the Lease Commencement Date or thereafter vacates, abandons or ceases to carry on its ordinary activities or fails to continuously operate its business in the Premises prior to the Lease expiration date, with or without an intention to pay Rent, unless caused by Force Majeure or performance of alterations or improvements; or

(E)    If Tenant or Guarantor shall file a petition in bankruptcy or for reorganization or for an arrangement pursuant to any federal or state bankruptcy law or any

23

similar federal or state law, or shall be adjudicated a bankrupt or become insolvent or shall make an assignment for the benefit of creditors or shall admit in writing its inability to pay its debts generally as they become due; or

(F)    If a petition or answer proposing the adjudication of Tenant or Guarantor as a bankrupt or its reorganization pursuant to any federal or state bankruptcy law or any similar federal or state law shall be filed in any court and Tenant or Guarantor, as the case may be, shall consent to or acquiesce in the filing thereof or such petition or answer shall not be discharged or denied within thirty (30) days after the filing thereof; or

(G)    If a receiver, trustee or liquidator of Tenant, or any Guarantor, of all or substantially all of the assets of Tenant or any Guarantor, or of the Premises or Tenant's estate therein shall be appointed in any proceeding brought by Tenant, or any Guarantor or if any such receiver, trustee or liquidator shall be appointed in any proceeding brought against Tenant or any Guarantor and shall not be discharged within thirty (30) days after such appointment.

Section 19.2.    If an Event of Default shall have occurred and is continuing Landlord shall have the following rights and remedies then or at any time thereafter, the election of which, singly or one or more in combination with each other, shall be at the sole option of Landlord:

(A)    To make any payment required to be made by Tenant or to do any act required to be done by Tenant, provided that the making of any such payment or the expense of doing such act by Landlord shall constitute Additional Rent hereunder due and payable together with interest and late charges with the installment of Monthly Minimum Rent next due, but the making of such payment or the doing of such act by Landlord shall not operate to cure such Event of Default or to estop Landlord from the pursuit of any remedy to which Landlord would otherwise be entitled.

(B)    To terminate this Lease by written notice to Tenant, whereupon this Lease shall end and all rights of Tenant (but not the liability of Tenant) hereunder shall expire and terminate.  Upon such termination by Landlord, Tenant will at once surrender possession of the Premises to Landlord and remove all of Tenant's personal property therefrom, and Landlord may forthwith re-enter and repossess the Premises and remove all persons and effects therefrom, by summary proceeding, ejectment or other legal action or by using such force as may be permitted. Landlord shall be under no liability by reason of any such reentry, repossession or removal.

(C)    Subject to applicable law, to enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying the Premises

or any part thereof, without being liable for prosecution or any claim for any damages or liability therefor and without terminating this Lease, and, if Landlord so elects, make such alterations and repairs as, in Landlord's absolute discretion, may be necessary to relet the Premises or any part thereof, without notice to Tenant, for such rent and such use, and for such period of time and subject to such terms and conditions as Landlord may deem advisable, and receive the rent therefor. Upon each such reletting, all rent received by Landlord from such reletting shall be applied, first, to the payment of any indebtedness, including interest thereon other than any Rent; second, to the payment of any costs and expenses of such reletting, including Brokerage fees, attorneys' fees and the costs of alterations, and repairs; third, to the payment of any Monthly Minimum Rent and Additional Rent due and unpaid, together with interest and late charges; and the residue, if any, shall be held by Landlord and applied in payment of future Rent as the same may become due and payable hereunder. Tenant agrees to pay Landlord, on demand, any deficiency that may arise by reason of such reletting. Landlord shall not be liable for any failure to relet the Premises or any part thereof or for any failure to collect any rent due upon any such reletting. Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this Lease for such prior default.

Section 19.3. If Landlord terminates this Lease pursuant to this Section:

(A)    Tenant shall remain liable for and shall pay on demand by Landlord (i) the full amount of all Monthly Minimum Rent and Additional Rent which would have accrued until the date on which this Lease would have expired had such termination not occurred, and any and all damages and expenses incurred by Landlord in reentering and repossessing the Premises, in making good any default of Tenant, in making any alterations to the Premises, in protecting and preserving the Premises, and in reletting the Premises, and any and all expenses which Landlord may incur during the occupancy of any new Tenant, less (ii) the net proceeds of any reletting of

25

the Premises which has occurred at the time of the aforesaid demand by Landlord to Tenant. Tenant agrees to pay to Landlord the difference between items (i) and (ii) above for the period through and including the date on which this Lease would have expired if it had not been terminated. Landlord shall be entitled to any excess with no credit to Tenant. Landlord may, in its sole discretion, make demand on Tenant as aforesaid on any one or more occasions, and any suit brought by Landlord to enforce collection of such difference for any one month shall not prejudice Landlord's right to enforce the collection of any difference for any subsequent month or months. In addition to the foregoing, and without regard to whether this Lease has been terminated, Tenant shall pay to Landlord all costs incurred by Landlord, including reasonable attorneys' fees, with respect to any lawsuit or action instituted or taken by Landlord to enforce the provisions of this Lease. Tenant's liability shall survive the institution of summary proceedings and the issuance of any warrant hereunder.

(B)    If Landlord determines that it is impracticable or extremely difficult to fix the actual damages, then, as an alternative to the remedy set forth in subparagraph (A), Tenant will pay to Landlord on demand, liquidated and agreed final damages for Tenant's default calculated in accordance with this paragraph. Liquidated damages hereunder shall be an amount equal to the excess, if any, of (i) all Monthly Minimum Rent and Additional Rent payable under this Lease from the date of such demand for what would be the then unexpired term of this Lease in the absence of such termination, over (ii) the then fair market rental value of the Premises. If any law shall limit the amount agreed upon, Landlord shall be entitled to the maximum amount allowable under such law. Nothing herein shall be construed to affect or prejudice Landlord's right to prove, and claim in full, unpaid rent accrued prior to termination of this Lease.

**Section 19.4.** **In the event of Tenant's default pursuant to this Article XIX, Tenant, on its own behalf and on behalf of all persons claiming through or under Tenant, including, but not limited to, all creditors, does hereby specifically waive any and all rights and privileges which Tenant and all such persons might otherwise have under any present or future law (a) to the service of any notice to quit or of Landlord's intention to re-enter or to institute legal proceedings, which notice may otherwise be required to be given, (b) to redeem the Premises, (c) to re-enter or repossess the Premises, (d) to restore the operation of this Lease with respect to any dispossession of Tenant by judgment or warrant of any court or judge, or any re-entry by Landlord, or any expiration or termination of this Lease, whether such dispossession, re-entry, expiration or termination shall be by operation of law or pursuant to the provisions of this Lease or (e) to the benefit of any law which exempts property from liability for debt or for distress for rent.**

26

Section 19.5.  Landlord shall have (in addition to all other rights) a right of distress for rent and a lien on all of Tenant's Personal Property as security for all Monthly Minimum Rent and Additional Rent payable under this Lease, subject to the rights of any party holding a security interest in any such Personal Property.

Section 19.6.  Pursuit of any of the foregoing remedies shall not preclude Landlord from pursuing any other remedies herein or at law or in equity provided, nor shall pursuit of any remedy by Landlord constitute a forfeiture or waiver of any Monthly Minimum Rent or Additional Rent due hereunder or of any damages accruing to Landlord by reason of Tenant's violation of any provisions of this Lease.  If any Event of Default occurs under this Lease, then regardless of what remedy Landlord elects to pursue, Landlord shall be entitled to collect all expenses incurred by Landlord in connection therewith, including, but not limited to, reasonable attorneys' fees.

ARTICLE XX
Sublease

Notwithstanding any other provisions of this Lease, Tenant covenants and agrees that it will not assign this Lease or sublet (which term, without limitation, shall include the granting of concessions, licenses, and the like) the whole or any part of the Premises without in each instance having first received the express written consent of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed.  In the event Tenant seeks Landlord's consent pursuant to this Article, Tenant shall furnish Landlord with such information regarding the prospective assignee or sublessee as Landlord may reasonably require, including without limitation, information regarding financial ability and business experience relating to the uses permitted hereunder.  For the purposes of this Lease, the entering into of any management agreement or any agreement in the nature thereof transferring control or any substantial percentage of the profits and losses from the business operations of Tenant in the Premises to a person or entity other than Tenant or an entity under common ownership or control, or otherwise having substantially the same effect, shall be treated for all purposes as an assignment of this Lease and shall be governed by the provisions of this Article.  In addition, for the purposes of this Lease, if Tenant is a corporation, the sale or transfer of fifty percent (50%) or more, or such smaller percentage as would result in a

change in the voting control of the voting stock of the corporation (if the Tenant is a corporation), the voting stock of any corporate Guarantor of Tenant specified herein, or the voting stock of any immediate or remote parent corporation of Tenant (whether such sale or transfer occurs at one time or at intervals so that, in the aggregate, over the term of this Lease, such transfer shall have occurred) or any other transaction(s) overall having the effect of a change in voting control or substantially the same effect if the entity in question is not a corporation (such as, without limitation, a change in the number or the identity of partners of a partnership, members and/or managers of a limited liability company or beneficiaries of a trust) shall be treated as if such sale or transfer or transaction(s) were for all purposes, an assignment of this Lease and shall be governed by the provision of this Article.

In the event of any permitted assignment or subletting, Landlord shall receive, as Additional Rent, twenty percent (20%) of the rent collected by Tenant in excess of the then Monthly Minimum Rent hereunder.

## ARTICLE XXI
### Guaranty

Section 21.1. Simultaneously with the execution of this Lease, Tenant shall deliver to Landlord an irrevocable and transferable letter of credit ("Letter of Credit") running in favor of Landlord. For the initial five (5) full years of the Initial Term, the Letter of Credit shall secure Tenant's obligations in the amount of six (6) month's Monthly Minimum Rent. Commencing at the beginning of year six (6) of the Initial Term and continuing throughout the remaining term of this Lease, the Letter of Credit shall secure Tenant's obligations in the amount of three (3) month's of Monthly Minimum Rent. The Letter of Credit shall be issued by a bank acceptable to Landlord in Landlord's reasonable discretion. If, during the term of this Lease, the Letter of Credit originally issued becomes unacceptable to Landlord in Landlord's reasonable discretion, Tenant shall at its sole cost substitute another Letter of Credit from a bank that is acceptable to Landlord in Landlord's sole reasonable discretion.

Tenant further covenants that this Letter of Credit guaranty shall remain and continue in full force and effect as to any renewal, modification or extension of said Lease. Tenant further agrees that in any right of action which shall accrue to Landlord under this Lease, Landlord may,

at its option, proceed against Tenant or the Letter of Credit, jointly or severally, and may proceed against the Letter of Credit notwithstanding having obtained any judgment against Tenant.

ARTICLE XXII
Miscellaneous Provisions

Section 22.1. Waiver. If under the provisions of this Lease a compromise or settlement shall be made, it shall not be considered a waiver of any breach of any covenant, condition or agreement herein contained, and no waiver of any breach of any covenant, condition or agreement shall be considered a waiver of the underlying covenant, condition or agreement, or of a subsequent breach thereof. No payment by Tenant or receipt by Landlord of an amount less than the monthly installments of Rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement on any check, or any letter accompanying any check or payment, be deemed an accord and satisfaction, and Landlord may accept any such check or payment without prejudice to Landlord's right to recover the balance due or to pursue any other remedy in this Lease. No re-entry by Landlord, and no acceptance by Landlord of keys from Tenant, shall be considered a termination or an implied acceptance of a surrender of this Lease. No failure by Landlord to insist upon the strict performance of any term, covenant, agreement, provision, condition or limitation of this Lease or to exercise any right or remedy consequent upon a breach thereof, and no acceptance by the Landlord of full or partial Rent during the continuance of any such breach, shall constitute a waiver of any such breach or of any such term, covenant, agreement, provision, condition or limitation. No term, covenant, agreement, provision, condition or limitation of this Lease to be kept, observed or performed by Landlord or by Tenant, and no breach thereof, shall be waived, altered or modified except by a written instrument executed by Landlord or by Tenant, as the case may be. No waiver of any breach shall affect or alter this Lease, but each and every term, covenant, agreement, provision, condition and limitation of this Lease shall continue in full force and effect with respect to any other then-existing or subsequent breach thereof. Any consent required of Landlord in any provision of this Lease may be withheld by Landlord in its sole discretion unless the provision requiring such consent specifically states that the Landlord shall not withhold such consent unreasonably.

Receipt and acceptance by Landlord of any rent payment with knowledge of the breach of any section of this Lease shall not be deemed to be a waiver of such breach.

Section 22.2. Covenant of Quiet Enjoyment. Tenant, subject to the terms and provisions of this lease on payment on the rent and observing, keeping and performing all of the terms and

29

provisions of this lease on its part to be observed, kept and performed shall lawfully, peaceably and quietly have, hold, occupy and enjoy the Premises during the term hereof without hindrance or ejection by any persons claiming under Landlord; but it is understood and agreed that this covenant and any and all other covenants of Landlord contained in this lease shall be binding upon Landlord and Landlord's successors only with respect to breaches occurring during Landlord's and Landlord's successors' respective ownership of Landlord's interest hereunder.  In addition, Tenant specifically agrees to look solely to Landlord's interest in the Property for recovery of any judgment from Landlord; it being specifically agreed that neither Landlord nor anyone claiming under Landlord shall ever be personally liable for any such judgment.  It is further understood and agreed that neither Landlord nor Tenant shall in any event be liable for failure to perform any obligation under this lease in the event such party is prevented from so performing by strike, lockout, breakdown, accidents, order or regulation of or by any governmental authority, or failure of supply, or inability by the exercise of reasonable diligence to obtain supplies, parts, or employees necessary to furnish such services, or because of war or other emergency, or for any cause beyond such party's reasonable control (except that financial inability shall never be deemed to be beyond such party's reasonable control), or for any cause due to any act or neglect of the other party or its servants, agents, employees, licensees, or any person claiming by, through or under such other party.  In any event, Tenant shall not condition the performance of any of its obligations in this Lease upon the performance by Landlord in any respect.  In no event shall Landlord ever be liable to Tenant for any indirect or consequential damages.

Section 22.3.  Status Report.  Recognizing that both parties may find it necessary to establish to third parties, such as accountants, banks, mortgagees, or the like, the then current status of performance hereunder, either party, on the written request of the other made from time to time, will promptly furnish a written statement of the status of any matter pertaining to this lease.  Without limiting the generality of the foregoing, Tenant specifically agrees, promptly upon the commencement of the term hereof, to notify Landlord in writing of the Commencement Date, and acknowledge satisfaction of the requirements with respect to construction and other matters by Landlord, save and except for such matters as Tenant may not then have knowledge or may wish to set forth specifically in said statement.

Section 22.4.  Notice to Mortgagee.  After receiving written notice from any person, firm, or other entity, that it holds a mortgage (which term shall include a deed of trust) which includes

30

as part of the mortgaged premises the Premises, Tenant shall, so long as such mortgage is outstanding, be required to give to such holder the same notice as is required to be given to Landlord under the terms of this lease, but such notice may be given by Tenant to Landlord and such holder concurrently. It is further agreed that such holder shall have the same opportunity to cure any default, and the same time within which to effect such curing, as is available to Landlord; and if necessary to cure such a default, such holder shall have access to the Premises.

Section 22.5. Assignment of Rents. With reference to any assignment by Landlord of Landlord's interest in this Lease, or the rents payable hereunder, conditional in nature or otherwise, which assignment is made to the holder of the first mortgage or deed of trust on the Premises, the Tenant agrees:

(a)    that the execution thereof by Landlord, and the acceptance thereof by such holder, shall never be deemed an assumption by such holder of any of the obligations of Landlord hereunder, unless such holder shall, by written notice sent to Tenant, specifically otherwise elect; and

(b)    that, except as aforesaid, such holder shall be treated as having assumed Landlord's obligations hereunder only upon foreclosure of such holder's mortgage or deed of trust or the taking of possession of the Premises by such holder.

Section 22.6. Mechanics' Liens. Tenant agrees immediately to discharge of record (either by payment or by filing of the necessary bond, or otherwise) any mechanics', materialmen's, or other lien against the Premises and/or Landlord's interest therein, which liens may arise out of any payment due for, or purported to be due for, any labor, services, materials, supplies, or equipment alleged to have been furnished to or for Tenant in, upon or about the Premises.

Section 22.7. No Brokerage. With the exception of Papadopoulos Properties which shall be compensated pursuant to a separate agreement with Landlord, Landlord and Tenant each represent that they have had no dealings with any real estate broker, finder or other person, with respect to this Lease in any manner. Tenant agrees to indemnify and hold harmless Landlord against and from any claim for brokerage commissions or other fees and all costs, expenses and liabilities in connection therewith, including, without limitation, attorneys' fees and expenses, arising out of any dealings Tenant had with any broker, finder or other persons.

Section 22.8. No Partnership. Nothing contained in this Lease shall be deemed or construed to create a partnership or joint venture between Landlord and Tenant, or create any

other relationship between the parties hereto other than that of Landlord and Tenant.

Section 22.9. Legal Fees and Expenses. Tenant agrees to pay to the Landlord the amount of all legal fees and expenses incurred by the Landlord arising out of or resulting from Tenant's failure to pay any Rent or Additional Rent in accordance with the terms of this Lease, including any fees incurred in connection with any legal proceeding with respect to such breach. Additionally, in the event of any other legal matter, dispute, action or proceeding is commenced by or between Landlord and Tenant under this Lease, the prevailing party shall be reimbursed reasonable attorneys' fees and court costs in such matter from the non-prevailing party.

Further, if the Tenant shall request the Landlord's consent or joinder in any instrument pertaining to this Lease, the Tenant agrees promptly to reimburse the Landlord for the reasonable legal fees incurred by the Landlord in processing such request, whether or not the Landlord complies therewith; and if the Tenant shall fail promptly so to reimburse the Landlord, same shall be deemed to be a default in the Tenant's monetary obligations under this Lease.

Section 22.10. Invalidity of Particular Provisions. If any term or provision of this Lease, or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

Section 22.11. Provisions Binding, Etc. Except as otherwise expressly provided herein, the terms hereof shall be binding upon and shall inure to the benefit of the successors and assigns, respectively, of Landlord and Tenant. Each term and each provision of this Lease to be performed by Tenant shall be construed to be both a covenant and a condition. The reference contained to successors and assigns of Tenant is not intended to constitute a consent to assignment by Tenant, but has reference only to those instances in which Landlord may later give written consent to a particular assignment as required herein.

Section 22.12. Other Agreements. Tenant hereby warrants and represents that neither this Lease nor the operation of the Premises hereunder violates the provisions of any instrument

heretofore executed by Tenant or any affiliate of Tenant, including, without limitation, any so-called radius restriction contained in any such instrument.

Section 22.13. Governing Law. This Lease shall be governed exclusively by the provisions hereof and by the laws of the District of Columbia as the same may from time to time exist.

Section 22.14. Recording. Tenant agrees not to record the within Lease, but each party hereto agrees, on request of the other, to execute a Notice of Lease in recordable form and complying with applicable laws, and reasonably satisfactory to Landlord's attorneys. In no event shall such document set forth the rental or other charges payable by Tenant under this Lease; and any such document shall expressly state that it is executed pursuant to the provisions contained in this Lease, and is not intended to vary the terms and conditions of this Lease.

Section 22.15. Notices. Whenever by the terms of this Lease notice, demand or other communication shall or may be given either to Landlord or to Tenant, the same shall be in writing and shall be sent by reputable overnight carrier:

If intended for Landlord, addressed to it at the address set forth on the first page of this Lease (or to such other address or addresses as may from time to time hereafter be designated by the Landlord by like notice); and

If intended for Tenant, addressed to it at the address set forth on the first page of this Lease (or to such other address or addresses as may from time to time hereafter be designated by the Tenant by like notice).

All such notices shall be effective two days after being sent by reputable overnight carrier.

Any such notice demand, or communication from an attorney acting or purporting to act on behalf of a party shall be deemed to be notice from such party provided that such attorney is authorized to act on behalf of such party.

Section 22.16. When Lease Becomes Binding. Employees or agents of Landlord have no authority to make or agree to make a Lease or any other agreement or undertaking in connection herewith. The submission of this document for examination and negotiation does not

33

constitute an offer to Lease, or a reservation of, or option for, the premises, and this document shall become effective and binding only upon the execution and delivery hereof by both Landlord and Tenant.

All negotiations, considerations, representations, and understandings between Landlord and Tenant are incorporated herein and may be modified or altered only by agreement in writing between Landlord and Tenant, and no act or omission of any employee or agent of Landlord shall alter, change, or modify any of the provisions hereof.  Tenant specifically confirms and acknowledges that: (i) before entering into this Lease, Tenant has made its own observations, studies, determinations and projections with respect to Tenant's business in the Premises and all other factors relevant to Tenant's decision to enter into this Lease, including, without limitation, competition, market size, sales volume, profitability and general, so-called "demographics" -- both present and prospective; and (ii) neither Tenant nor any representative of Tenant has relied upon any representation by (or any "conversation" with) Landlord or any representative of Landlord with respect to any of said factors.

Section 22.17.  Paragraph Headings.  The paragraph headings throughout this instrument are for convenience and reference only, and the words contained therein shall in no way be held to explain, modify, amplify, or aid in the interpretation, construction, or meaning of the provision of this Lease.

Section 22.18.  Subordination, Attornment and Non-Disturbance.  This Lease and Tenant's interest hereunder shall be subject and subordinate to the lien of any mortgage now or hereafter placed upon the Property, and to all renewals, modifications, replacements, consolidations and extensions thereof and to any and all advances made thereunder and the interest thereon.  Tenant agrees that within five (5) days after written request therefor from Landlord, it will, from time to time, execute and deliver any instrument or other document required by any such lessor or mortgagee to subordinate this Lease and its interest in the Demised Premises to such lease or the lien of any such mortgage.  Tenant will also upon request submit current financial statements and financial statements covering the five (5) immediately preceding years.  Tenant's subordination is expressly contingent on Landlord obtaining from any future mortgagee or other lienholder, a non-disturbance agreement for the benefit of Tenant, which non-disturbance agreement shall be based upon such ground lessor's, mortgagee's or other lienholder's standard and customary form.

In the event that any bank, insurance company, university, pension or welfare fund, savings and loan association, real estate investment trust, business trust, or other financial institution providing interim construction financing for the Property and/or permanent financing

for the Property requires, as a condition of such financing, that modifications to this Lease be obtained, and provided that such modifications (i) are reasonable, (ii) do not adversely affect Tenant's use of the Premises as herein permitted, and (iii) do not increase the rentals and other sums required to be paid by Tenant hereunder or other materially increase Tenant's obligations or reduce its rights, Landlord shall submit such required modifications to Tenant, and Tenant shall enter into and execute a written amendment hereto incorporating such required modifications within ten (10) days after the same have been submitted to Tenant by Landlord.  If Tenant shall fail to so enter into and execute such written amendment, then an Event of Default shall be deemed to have occurred.

In the event of (i) a transfer of Landlord's interest in the Premises, or (ii) the purchase of the Property or Landlord's interest therein at a foreclosure sale or by deed in lieu of foreclosure under any mortgage or pursuant to a power of sale contained in any mortgage, then in any of such events Tenant shall attorn to and recognize the transferee or purchaser of Landlord's interest as Landlord under this Lease for the balance then remaining of the Term, and thereafter this Lease shall continue as a direct lease between such person, as "Landlord", and Tenant, as "Tenant," and such lessor, transferee or purchaser shall not be liable for any act or omission of Landlord prior to such lease termination or prior to such person's succession to title, nor be subject to any offset, defense or counterclaim occurring prior to such lease termination or prior to such person's succession to title for more than one month in advance.

Section 22.19.  Holding-Over.  In the event that Tenant shall not immediately surrender the Premises on the date of expiration of the Term, Tenant shall, by virtue of the provisions hereof, become a Tenant by sufferance at a monthly rent equal to one hundred and fifty percent (150%) of  the Rent in effect during the last month of the Term, with said monthly tenancy commencing the first day after the expiration of the Term, subject to all of the conditions and covenants of this Lease (such time during which the Tenant occupies the Premises following the expiration of the Term is, the "Hold-Over Tenancy").  During any such Hold-Over Tenancy, Tenant shall give to Landlord at least thirty (30) days' written notice of any intention to quit the, and Tenant shall be entitled to thirty (30) days' written notice to quit the Premises, except in the event of nonpayment of Rent, the breach of any other covenant by Tenant or as otherwise provided in the next paragraph, in any of which events Tenant shall not be entitled to any notice to quit, the usual thirty (30) days' notice to quit being hereby expressly waived.  Notwithstanding the foregoing provisions of this Article, in the event that Tenant shall hold over after the expiration of the Term hereby created, and if Landlord shall desire to regain possession of the Premises promptly at the expiration of the Term, then, at any time prior to Landlord's acceptance of any month's rent from Tenant as a monthly Tenant hereunder, Landlord, at its option, may,

without prior notice, forthwith re-enter and take possession of the Demised Premises without process, or by any legal process available in the jurisdiction in which the Demised Premises are located. Tenant shall be liable for all damages (direct, consequential or other) to Landlord resulting from Tenant's not timely vacating the Premises and Tenant shall indemnify and hold Landlord harmless from all cost, loss, claim, damages and liabilities, that Landlord may suffer from any holdover by Tenant.

Section 22.20. No Representation by Landlord. Except as herein expressly set forth, neither Landlord nor any agent or employee of Landlord has made any representation or promise with respect to the Premises or its suitability for Tenant's intended use, and by taking possession of the Premises "as is" and such taking of possession shall be conclusive evidence that the Premises is in good and satisfactory condition at the time of such taking of possession. In addition, Landlord makes no representations relating to any improvements or facilities that may be constructed adjacent to or contiguous to the Premises.

Section 22.21. Force Majeure. All deadlines for Landlord hereunder and Landlord's financial obligations relating thereto shall be subject to and extended by the occurrence of events of force majeure, including but not limited to strikes, lockouts or labor disputes, the inability of Landlord or Landlord's contractors after the exercise of reasonable diligence to obtain labor, materials, or utility services or reasonable substitutes therefor, acts of God, fire or other casualty, new or unanticipated governmental restrictions (including those relating to shutdowns for pandemics or public health emergencies), actions or inactions (including failure to timely issue necessary permits), enemy or hostile governmental action, litigation, civil commotion, riots, tornados, hurricanes or tropical storms preventing construction work on the Premises, or other casualty beyond the reasonable control of Landlord and not due to the fault or negligence of Landlord (collectively, "Force Majeure").

Section 22.22. Deleted.

Section 22.23. Tenant's Authority. Tenant hereby covenants that it has the full right, power and authority to enter into this Lease upon the terms and conditions herein set forth and shall provide to Landlord any evidence required by Landlord to so indicate said authority. If Tenant is a corporation, partnership or limited liability company, the individual signing the Lease

hereby confirms that he has the authority to bind said corporation, partnership or limited liability company by his signature. If it is subsequently found that the individual executing this Lease lacked authority to so sign, Landlord shall have the sole option to declare this Lease null and void or have this Lease remain in full force and effect and/or have said individual be and remain personally liable for all terms and conditions hereof.

Section 22.24. Security Deposit. At the full execution of this Lease, Tenant shall remit to Landlord the sum of Sixty Thousand Dollars ($60,000) which shall be credited as follows: first to the Monthly Minimum Rent due for the thirteenth (13th) full month of the Initial Term (ie. the thirteenth (13th) month following the Lease Commencement Date; secondly to the Monthly Minimum Rent for the first full month of the seventh (7th) year of the Initial Term, and lastly the balance applied to the Monthly Minimum Rent for the last (120th) month of the Initial Term.

Section 22.25. Title. Landlord warrants and represents to Tenant that Landlord has good fee simple title to the Property, free and clear of any restrictions which would have a material, adverse effect on the operation of Tenant's business from the Premises.

Section 22.26. Deleted.

Section 22.27. Waiver of Trial by Jury. The parties hereto shall, and they hereby do, waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other involving any matter whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use and occupancy of the Premises and/or any claim or counterclaim of injury or damage. In the event Landlord commences any proceedings for nonpayment of any amount due pursuant to this Lease, Tenant agrees not to interpose any counterclaim of whatever nature or description in any such proceedings. This shall not, however, be construed as a waiver of Tenant's right to assert any mandatory counterclaim which may not be brought in a separate action, or to bring any claim in a separate motion or actions brought by Tenant.

Section 22.28. Estoppel Certificates. Tenant shall: without charge therefor, at any time and from time to time, within ten (10) days after request therefor by Landlord, execute, acknowledge and deliver to Landlord a written estoppel certificate certifying to Landlord, any mortgagee, assignee of a mortgagee, or any purchaser of the Premises, or any other person designated by Landlord, as of the date of such estoppel certificate, (i) that Tenant is in possession

of the Premises, (ii) that this Lease is unmodified and in full force and effect (or if there have been modifications, that the Lease is in full force and effect as modified and setting forth such modifications); (iii) whether there are then existing any setoffs or defenses against the enforcement of any right or remedy of Lessor, or any duty or obligation of Tenant hereunder (and, if so, specifying the same in detail); (iv) the dates through which Monthly Minimum Rent and Additional Rent have been paid; (v) that Tenant has no knowledge of any then-uncured defaults on the part of Landlord under this Lease (or if Tenant has knowledge of any such uncured defaults, specifying the same in detail); (vi) that Tenant has no knowledge of any event having occurred that authorizes the termination of this Lease by Tenant (or if Tenant has such knowledge, specifying the same in detail); and (vii) the amount of any Deposit held by Landlord. If Tenant shall fail to so execute and deliver such written estoppel certificate, then an Event of Default shall be deemed to have occurred. Tenant shall not be required to deliver more than two estoppel certificates during any twelve-month period.

Section 22.29. Sale of Liquor.

(a)     Sale of Liquor. Provided that Tenant (i) complies with all state, municipal and other governmental laws, regulations and rules with respect to the sale of liquor and all alcoholic beverages as aforesaid, and (ii) complies with applicable provisions of this Lease, Landlord agrees that Tenant named in this Lease, shall have the right to sell liquor at retail for consumption within the Premises, subject to and in accordance with all applicable provisions of the Liquor License and this Lease.

(b)     Indemnity and Liability Insurance. Without limiting the generality of ARTICLE XIII of this Lease, Tenant agrees to indemnify and hold harmless Landlord from and against any and all claims and any and all loss, cost, damage or expense relating to the sale of liquor and all alcoholic beverages in and from the Premises, including, without limitation, any such claim arising from any act, omission or negligence of Tenant, or Tenant's contractors, licensees, agents, employees or invitees, or from any accident, injury, or damage whatsoever caused to any person or to the property of any person occurring from and after the date that possession of the Premises is delivered to Tenant until the end of the term of this Lease, including any extensions thereof, whether such claim arises or accident, injury or damages occurs within the Premises, or outside the Premises. This indemnity and hold harmless agreement shall include indemnity against all

38

costs, expenses and liabilities (including, without limitation, legal fees, court costs and other reasonable disbursements) incurred or made in connection with any such claim or proceeding brought thereon, and the defense thereof, and shall survive the termination of this Lease. It is understood that without this indemnification of Landlord by Tenant, Landlord would not enter into this Lease and would not permit the sale of alcoholic beverages in or from the Premises, and Tenant covenants that Tenant's liability insurance referred to in this Lease shall cover, indemnify and hold harmless Landlord from all such matters and items mentioned in this indemnity. Without limiting the generality of other provisions of this Lease regarding insurance coverage to be maintained by Tenant, including the provisions of ARTICLES XIII hereof, Tenant agrees during the term of the Lease to maintain with a responsible and qualified insurance company approved by the Landlord, in addition to the insurance specified in Section 13.2 above, minimum limits of insurance coverage of at least $2,000,000 under an umbrella policy covering excess general liability as described in Section 13.2 herein and excess "liquor law" liability as described in Section 13.2 hereof and this Section 22.29(C), or in such higher limits as Landlord may from time to time request, provided such higher limits are then customarily being carried by first-class restaurant operations in the District of Columbia or Metropolitan area, selling beer, wine and other alcoholic beverages, so that at all times Landlord will be fully protected against any claims that may arise by reason of or in connection with the sale and dispensing of liquor and alcoholic beverages in and from the Premises. Certificates of such insurance shall at all times be deposited with Landlord showing current insurance in force; and all such policies shall name Landlord as an additional insured and shall provide that such policies shall not be cancelled or the coverage reduced without at least thirty (30) days prior written notice to the Landlord, and such certificate shall evidence the same.

(c)    Pledge of Liquor License. Except in connection with any financing associated with its business, Tenant shall not sell, transfer, pledge, hypothecate or otherwise transfer or encumber the Liquor License to or in favor of any party (other than Landlord), including, without limitation, any assignee or sublessee of Tenant, or any transferee of Tenant's stock or survivor of any merger, reorganization or consolidation involving Tenant herein named without Landlord's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. As security for the performance by Tenant of its obligations under this Lease and,

39

without limitation, in consideration of Landlord entering into this Lease and permitting the sale by Tenant of liquor and other alcoholic beverages in and from the Premises, Tenant shall, and hereby does, pledge and grant to Landlord, commencing when Tenant obtains any right, title or interest in or to any such Liquor License and continuing throughout the entire term of this Lease, a security interest in the Liquor License heretofore or hereafter acquired by Tenant for the sale of liquor and all alcoholic beverages in and from the Premises, together with all of Tenant's right, title, interest, power and authority in, to, under or by virtue of such Liquor License and any and all extensions, renewals and replacements thereof. Such security interest shall automatically, without the need to execute any further writings or to commence, take or prosecute any further actions, be and become absolute and foreclosed, immediately vesting in and transferring to Landlord ownership of the Liquor License and all of Tenant's said right, title and interest, power and authority in, to, under and by virtue thereof, as aforesaid, upon and effective as of the expiration or earlier termination of the term of this Lease on account of or relating to an Event of Default (as herein defined). Without limiting the generality of the foregoing, Tenant agrees, promptly from time to time upon the request of Landlord to execute and deliver to Landlord a security agreement, financing statement, and such other documentation as Landlord may reasonably request, all in such form and with such substance as may reasonably be required by Landlord, in order further to evidence and confirm the granting and continued effectiveness of such security interest and any transfer of the Liquor License to Landlord in accordance with the provisions of this Lease. Any default by Tenant under the provisions of any such security agreement or attendant security documentation continuing beyond any applicable grace period, if any is set forth therein, shall constitute an Event of Default hereunder, and vice-versa. In any event, and without limitation, Landlord shall be protected as a secured party and shall have all rights and remedies with respect to its said security interest in the Liquor License of a secured party under the provisions of the Uniform Commercial Code. Upon the final transfer and assignment to Landlord or its nominee of the Liquor License in accordance with the foregoing and the delivery by Tenant to Landlord of possession of the Premises with all of Tenant's charges having been paid and otherwise in accordance with the provisions of this Lease, Landlord promptly shall pay to Tenant, as consideration for such transfer and assignment, an amount equal to the purchase price originally paid by Tenant for the Liquor License (but not any increased market value thereof less any amount due and owing to Landlord from Tenant). Landlord shall

40

also indemnify Tenant from any claims arising from such assignment. The foregoing security interest of Landlord shall be subordinate to any financing obtained by Tenant (or its affiliated entities) in connection with its business and Landlord shall execute such additional documents as may be requested by Landlord in order to effect this subordination.

(d)    Transfer of Liquor License. Tenant agrees that the Liquor License and all of Tenant's right, title, interest, power and authority in, to, under or by virtue of the Liquor License shall upon the expiration or earlier termination of the term of this Lease, including any extension thereof, automatically pass and be transferred and assigned to Landlord or its nominee; and, that Tenant shall, subject only to receiving the required approval by the appropriate governmental authorities and officials of the District of Columbia, transfer the Liquor License to Landlord or its nominee upon the expiration or earlier termination of the term of this Lease, and in the event Tenant fails so to do within ten (10) days after demand in writing, Tenant does hereby make, constitute and irrevocably appoint Landlord as its attorney-in-fact and in its name, place and stead so to do. Tenant agrees to indicate its agreement to transfer the Liquor License to Landlord on any application for a liquor license and further agrees to do all such acts and to execute and deliver to Landlord all such instruments as shall be required by Landlord, or by the appropriate governmental authorities of the District of Columbia, in connection with the transfer of the Liquor License to Landlord or its nominee as aforesaid. Upon the final transfer and assignment to Landlord or its nominee of the Liquor License in accordance with the foregoing and the delivery by Tenant to Landlord of possession of the Premises with all of Tenant's charges having been paid to Landlord and otherwise in accordance with the provisions of this Lease, Landlord promptly shall pay to the Tenant, as consideration for such transfer and assignment, an amount equal to the purchase price originally paid by Tenant for the Liquor License. Notwithstanding any of the provisions stated above, Landlord agrees that Tenant's License and Lease is an asset of Tenant's business and, as such, Tenant may sell the License or assign his Lease to any prospective tenant to the Premises, subject to Landlord's consent, which consent shall not be unreasonably withheld.

(e)    Security Measures. Tenant covenants and agrees to maintain order and decorum in and around all portions of the Premises, and if auxiliary personnel shall reasonably be required

41

to maintain such order and decorum, the same shall be provided by and at the expense of Tenant. Tenant shall use all reasonable efforts to avoid any conduct of any kind considered by the Landlord to be improper or offensive, whether occurring in or in the vicinity of the Premises; and the Tenant agrees immediately to take any steps that the Landlord shall require in order to insure compliance with the foregoing provisions and to insure that liquor and alcoholic beverages served in or from the Premises are not consumed outside such areas within the Premises as are permitted by the Liquor License and under applicable provisions of law and this Lease.

SIGNATURES ON FOLLOWING PAGE

IN WITNESS WHEREOF, the execution hereof under seal in any number of counterpart copies, each of which shall be deemed an original for all purposes as of the day and year first above written.

WITNESS:

**TENANT:**

School of SMIRE LLC, a Delaware LLC

By:

**LANDLORD:**

218 7TH ST SE LLC

By:

Christopher Powell, member

43