**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **218 7th STREET SE LLC**, | |
| *Plaintiff*, | |
| **v.** | Civil Action No.: 1:25-cv-03625-ABJ |
| **SCHOOL OF SMIZE LLC**, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS' MOTION FOR SANCTIONS

Defendants School of Smize LLC ("**School of Smize**"), Tyra Banks, and Louis Martin (collectively "**Defendants**"), by their undersigned counsel and pursuant to 28 U.S.C. § 1927 and the inherent powers of this Court, move for sanctions against Plaintiff 218 7th Street SE LLC ("**Plaintiff**") and its counsel, for their reckless and bad faith conduct. Defendants' counsel conferred with Plaintiff's counsel prior to filing this motion and attempted to resolve the matters raised herein but could not reach a resolution. Plaintiff and its counsel oppose this Motion.

## INTRODUCTION

Defendants and their counsel do not make this Motion lightly or without circumspection. In each case they handle, undersigned counsel strive to employ zealous advocacy on behalf of their clients while maintaining professional civility and candor towards opposing parties and counsel. Moving for sanctions strains that delicate fabric of civility, and thus, the undersigned are generally reluctant to do so. Nevertheless, as evidenced by the wide body of caselaw on sanctions, there are occasions where abusive, bad faith litigation tactics necessitate a judicial response. Unfortunately, this is one such occasion.

This case should have never been filed in federal court. It arises from a garden-variety commercial lease dispute involving purely state law claims. Evidently, Plaintiff, a D.C. landlord, sought to "make a federal case" of it because its tenant, Defendant School of Smize, is part of a trending startup ice cream brand called "SMiZE & DREAM" founded by supermodel and media personality, Tyra Banks.[1] Conjuring specious veil-piercing claims in a desperate attempt to sue a celebrity personally, Plaintiff commenced this action against Ms. Banks, her partner Louis Martin, and School of Smize, asserting diversity of citizenship jurisdiction as its basis for filing in this federal forum.

Aside from the substantive baselessness of Plaintiff's claims (particularly its veil-piercing claims woven from whole cloth), this case suffered a threshold and fatal jurisdictional defect: Tyra Banks, for purposes of federal diversity jurisdiction, is "stateless," since she is a U.S. citizen domiciled abroad in Australia. Consequently, under well-established law, any case naming Ms. Banks as a party cannot proceed in federal court on the basis of diversity jurisdiction.[2]

Neither Plaintiff nor its counsel can claim ignorance of this fact. Ms. Banks has spoken publicly about her move to Australia, which was widely reported across numerous entertainment news websites many months before Plaintiff filed suit.[3] Any reasonable pre-suit inquiry, including a rudimentary Google search, would have revealed Ms. Banks's non-U.S. domicile. Remarkably, Plaintiff's own Complaint acknowledges Ms. Banks's relocation to Australia; yet paradoxically, Plaintiff still averred (baldly, without any specific allegations) that diversity jurisdiction existed, and still decided to file suit in federal court.

---

[1] *See Williams v. Savage*, 538 F. Supp. 2d 34, 36 (D.D.C. 2008) (criticizing plaintiffs for "seek[ing] to make a federal case out of an ordinary car accident" by asserting baseless federal claims).

[2] *See, e.g., Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 829 (1989); *Janvey v. Proskauer Rose, LLP*, 59 F. Supp. 3d 1, 6 (D.D.C. 2014).

[3] *See infra* at footnote 4.

Hoping to avoid the expense and burden of filing a motion to dismiss for the obvious lack of subject matter jurisdiction, Defendants' counsel immediately raised the jurisdictional issue with Plaintiff's counsel <u>the day after suit was filed</u> and asked her to dismiss the suit, even if only to re-file in another forum.  Plaintiff's counsel roundly refused, and even declined to provide her good faith basis for asserting diversity jurisdiction, claiming that the determination of jurisdiction would be made by the Court.

Left no other choice, Defendants filed their Motion to Dismiss.  Twice, Plaintiff's counsel requested extensions of time to respond to the motion, and each time, Defendants' counsel consented, granting Plaintiff a total of **50 days** to file its opposition.  Disturbingly, Plaintiff and its counsel exploited the extra time by taking their case to the press, disseminating slanted (and even false) statements about the underlying lease dispute to corral public opinion against Ms. Banks and tarnish Defendants' reputations.  Meanwhile, Defendants waited for December 30, 2025 – the extended filing deadline for Plaintiff's opposition – to finally learn what good faith grounds Plaintiff and its counsel had for filing in federal court.

Yet astonishingly, Plaintiff never did file an opposition.  Instead, on the day of the twice-extended opposition deadline, Plaintiff's counsel voluntarily dismissed this case and refiled the Complaint in a new action in D.C. Superior Court.  In other words, Plaintiff and its counsel did exactly what Defendants' counsel had asked of them two months ago – but only *after* Defendants incurred the substantial costs and burdens of preparing and filing their Motion to Dismiss.

Plaintiff and its counsel's conduct smacks of recklessness and bad faith.  They utterly failed to conduct their legally mandated pre-suit inquiry to confirm this Court had jurisdiction before filing suit.  They then compounded their errors by passing on – indeed, categorically rejecting – an opportunity to cure their violations when asked by Defendants' counsel at the very genesis of

this action to dismiss the case and re-file elsewhere.  They led Defendants' counsel to believe that they had a legitimate basis for invoking diversity jurisdiction and secured additional time to file an opposition, only to ultimately voluntarily dismiss the case after Defendants expended substantial resources briefing a comprehensive Motion to Dismiss.  In the meantime, Plaintiff and its counsel elected to begin trying their case in the media, in contravention of the Rules of Professional Conduct.  As the emails between counsel suggest, Plaintiff and its counsel's tactics were part of a scheme to pressure Defendants into settling this matter for the high dollars demanded by them.

In all, Plaintiff and its counsel's tactics amount to reckless and bad faith conduct, have prejudiced Defendants, and are sanctionable under 28 U.S.C § 1927 and this Court's inherent powers.  With cautious conviction, Defendants respectfully move for the imposition of sanctions.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff files suit on non-existent diversity jurisdiction grounds.

On April 17, 2024, Defendant School of Smize executed a Lease Agreement with Plaintiff (the "**Lease**") to lease property owned by Plaintiff located at 218 7th Street SE in Washington, D.C.  As detailed in Defendants' Motion to Dismiss (ECF No. 4),[4] School of Smize intended to utilize the property as both a flagship U.S. location for the SMiZE & DREAM ice cream brand and as a learning center for young adults to develop ground-up business and entrepreneurial skills. However, due to Plaintiff's material breaches (also detailed in Defendants' Motion to Dismiss), School of Smize elected to terminate the Lease, and provided notice of termination to Plaintiff on September 9, 2024.

---

[4] The Motion to Dismiss contains extensive factual background relating to the underlying Lease dispute.  (*See* Motion to Dismiss at 1-7).

Over a year later, on October 9, 2025, Plaintiff commenced this action by filing its Complaint against Defendants (ECF No. 1), asserting contract, quasi-contract, and veil-piercing claims, and seeking damages of over $2.8 million. As grounds for this Court's jurisdiction, Plaintiff baldly alleged that "there is complete diversity of citizenship between Plaintiff and all Defendants," without ever alleging the actual citizenship of any party. *See* Compl. at ¶ 21.

At the same time, the Complaint acknowledged that Ms. Banks (and Mr. Martin) had moved to Australia. *See* Compl. at ¶ 12. This acknowledgment was, of course, consistent with widely reported and publicly available internet news stories covering Ms. Banks's move to Australia, many of which were published in April 2025 – six months before Plaintiff filed this action.[5] As reported in those media articles, Ms. Banks had been living in Australia with her family for the past 18 months, deciding to make the move after numerous trips to the area for the development of the SMiZE & DREAM business.

**B.     Plaintiff's counsel refuses to voluntarily dismiss the suit without prejudice, and pressures Defendants to settle.**

On October 10, 2025, the day after the Complaint's filing, Defendants' undersigned counsel reached out to Plaintiff's counsel requesting a call to discuss service and jurisdiction. *See* Exhibit 1 (counsel email exchange) at 6. Counsel spoke by phone that day regarding several issues, including Defendants' acceptance of service, an agreement regarding Defendants' time to respond to the Complaint, Plaintiff's desire for settlement, and, most relevantly here, jurisdiction. The undersigned stressed to Plaintiff's counsel that Ms. Banks's status as a U.S. citizen domiciled

---

[5] *See, e.g.,* PEOPLE.COM, *Tyra Banks Opens Up About Why She Moved to Australia with Her Family: 'Dream Come True'*, (April 14, 2025), https://people.com/tyra-banks-reveals-why-she-moved-to-australia-with-her-family-11715202; E! NEWS, *Tyra Banks Reveals Why She Moved to Australia*, (April 15, 2025), https://www.eonline.com/news/1416136/tyra-banks-details-move-to-australia; MAMAMIA, *Tyra Banks told us what her new life in Australia really looks like*, (April 3, 2025), https://www.mamamia.com.au/tyra-banks-sydney/.

abroad deemed her "stateless" and destroyed diversity jurisdiction.  The undersigned asked if Plaintiff would agree to voluntarily dismiss the case to avoid the expense of Defendants having to file a motion to dismiss; emphasizing that if Plaintiff desired, it could dismiss the case without prejudice and re-file in an appropriate state court.  Shortly after the call, the undersigned sent the following confirmatory email to Plaintiff's counsel:

> Arziki,
>
> Thank you for consenting to the small extension. We will accept service.
>
> Please get back to me on jurisdiction at your earliest opportunity. **As discussed, Ms. Banks is a U.S. citizen domiciled in Australia, deeming her "stateless" for diversity jurisdiction purposes and thus destroying diversity jurisdiction.** <u>**Please let me know if you will agree to voluntarily dismiss the case; you could re-file it in an appropriate state court if you so choose**</u>.

*See* <u>Exhibit 1</u> at 4 (emphasis added).

On October 13, 2025, Plaintiff's counsel responded to the undersigned's email by emphatically refusing to voluntarily dismiss the case and by standing firm with the position that diversity jurisdiction existed, though doing so only "upon information and belief," as follows:

> First, we maintain that diversity of citizenship exists in this case and venue is proper in the District Court for the District of Columbia. The Court will consider numerous factors in making that determination. Upon information and belief, Ms. Banks remains domiciled in either New York or California for the purposes of diversity jurisdiction, and we reasonably expect that thorough discovery will support that fact.
>
> **In any case, we will <u>not</u> voluntarily dismiss this suit and are prepared to litigate to secure rightful payment.** […]

*Id.* at 3-4 (emphasis in original).  On October 17, 2025, the undersigned responded to Plaintiff's counsel disagreeing with her conclusory "on information and belief" jurisdictional assertions, which made it impossible to vet whether any good faith basis for diversity jurisdiction actually existed.  *See Id.* at 2.   In a response email several days later, Plaintiff's counsel wrote:

Venue is proper in the District Court for the District of Columbia. **Although you may not be able to assess the good faith bases for our invocation of federal jurisdiction, fortunately Judge Jackson is tasked with making this determinati**on.

*See Id.* at 1-2 (emphasis added).

Additionally, as the email exchanges reflect, Plaintiff's counsel repeatedly pressed Defendants for a settlement offer to resolve the case, while undersigned counsel noted Defendants' reluctance to negotiate against Plaintiff's exorbitant $2.8 million demand that they felt had no meritorious factual or legal basis. *See Id.* at 2-5. To cajole a settlement offer out of Defendants, Plaintiff's counsel began referencing potential media exposure if a settlement could not be reached, stating in an email on October 30, 2025 that her client had "received several press inquiries regarding this case" and that they were "considering whether to issue a statement." *Id.*at 1. A week later on November 6, 2025, Plaintiff's counsel wrote that she and her client intended to begin making statements to the press unless a settlement was reached, stating: "We have elected to begin responding to press inquiries next week unless the parties have begun to formalize settlement negotiations." *Id.* at 1.

**C.    After Defendants' Motion to Dismiss, Plaintiff and its counsel eventually dismiss this case, and disseminate statements to the press.**

On November 10, 2025, Defendants filed their Motion to Dismiss (ECF No. 4), seeking dismissal for both lack of subject matter jurisdiction and failure to state a claim under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[6] In support of the Rule 12(b)(1) component of their Motion, Defendants highlighted, among other things: (i) the Complaint's complete failure to affirmatively allege the

---

[6] Pursuant to Fed. R. Civ. P. 12(g)(2), Defendants were compelled by rule to raise all available grounds for dismissal under Rule 12(b) in a single motion.

citizenship of **any** party (even itself); and (ii) Ms. Banks's status as a "stateless" person over whom federal courts have no diversity jurisdiction.[7] *See* Motion to Dismiss at 7-14.

Pursuant to Local Civil Rule 7(b), Plaintiff had 14 days (until November 24, 2025) to respond to the Motion to Dismiss. Twice, Plaintiff's counsel asked Defendants' counsel to consent to extensions, and each time, Defendants' counsel agreed. As a result, this Court granted two consent motions for extensions filed by Plaintiff, collectively extending the response deadline to December 30, 2025 and providing Plaintiff a total of 50 days to prepare and file an opposition to the Motion to Dismiss. (ECF Nos. 6, 7).

Plaintiff never did file the anticipated opposition. Rather, on the due date of December 30, 2025, Plaintiff voluntarily dismissed this case (ECF No. 8) and commenced a new action against Defendants in D.C. Superior Court.[8] In other words, Plaintiff and its counsel ultimately acknowledged that they lacked good faith grounds for asserting diversity jurisdiction and dismissed this action as Defendants' counsel asked – but only *after* Defendants' bore the burden and expense of preparing and filing a comprehensive Motion to Dismiss.

Worse, exploiting the extra time and grace afforded by Defendants and the Court, Plaintiff made good on their threats to publicize their slanted version of the case through the media. Specifically, on December 11, 2025, the DailyMail published an article about the underlying Lease dispute based on an "exclusive interview" with Plaintiff's principal, Christopher Powell.[9] The article, which presented a one-sided version of events favoring Plaintiff and disparaging

---

[7] Notably, as the Motion to Dismiss explained, School of Smize LLC is also "stateless" because Ms. Banks is the trustee of a trust that is its ultimate individual sub-member.

[8] The D.C. Superior case is pending as Case No. 2025-CAB-008514. To be sure, Defendants do not admit to the jurisdiction or propriety of that venue, which they will address in that case.

[9] *See* DAILYMAIL, *Tyra Banks being sued for $2.8 million in messy lawsuit over ice cream shop amid strife over Australia move and bizarre rant*, (Dec. 11, 2025), https://www.dailymail.co.uk/tvshowbiz/article-15371309/tyra-banks-sued-unpaid-rent-smize-dream-ice-cream-shop.html.

Defendants, was further supported by statements from Plaintiff's counsel herself, who falsely remarked that Defendants were scheming to "drag [Plaintiff] through litigation despite knowing they are in flagrant breach."[10]   A similar statement was provided by Plaintiff's counsel to Entertainment Weekly.[11]   News of the lawsuit has now spread across the internet, all because of Plaintiff's affirmative actions to publicize the case and provide prejudicial accounts of the underlying Lease dispute.

## <u>ARGUMENT</u>

**A.      The Court is authorized to sanction Plaintiff and Plaintiff's Counsel under 28 U.S.C. § 1927 and its inherent authority.**

Under 28 U.S.C. § 1927, federal district courts are statutorily empowered to sanction attorneys who "unreasonably and vexatiously" multiply or elongate proceedings, as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Unreasonable and vexatious behavior is demonstrated by "'evidence of recklessness, bad faith, or improper motive' present in the attorney's conduct." *Hall v. Dep't of Homeland Sec.*, 219 F. Supp. 3d 112, 119 (D.D.C. 2016) (quoting *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 906 (D.C. Cir. 1998)).  "A court may **<u>infer</u>** this malicious intent '**<u>from a total lack of factual or legal basis'</u>** in an attorney's filings."  *Hall*, 219 F. Supp. 3d at 119 (quoting *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227 (7th Cir. 1984)) (emphasis added).  To that end, § 1927 sanctions may be

---

[10] *Id.*

[11] *See* ENTERTAINMENT WEEKLY, *Tyra Banks sued for $2.8 million by landlord over ice cream shop lease,* (Dec. 12, 2025), https://ew.com/tyra-banks-sued-for-usd2-8-million-over-ice-cream-shop-lease-11868225.

imposed where an attorney's decisions "reflect a reckless indifference to the merits of a claim." *Reliance Ins. Co. v. Sweeney Corp., Maryland*, 792 F.2d 1137, 1138 (D.C. Cir. 1986).

Further, under longstanding Supreme Court precedent, "[f]ederal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases… includ[ing] the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)) (internal quotations omitted). One such sanction is "an order… instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Id.* (citing *Chambers*, *supra*). In this regard, courts may exercise their inherent powers to sanction a party acting "in bad faith, vexatiously, wantonly, or for oppressive reasons," including "by delaying or disrupting the litigation." *Chambers*, 501 U.S. at 46 (citations omitted).

Despite their overlap, there are some distinctions between the two sanction authorities. Whereas sanctions under the court's inherent powers are "compensatory rather than punitive," *Goodyear*, 581 U.S. at 108, sanctions under § 1927 are widely recognized as penal in nature. *See Alexander v. F.B.I.*, 541 F. Supp. 2d 274, 303 (D.D.C. 2008). Further, while § 1927 sanctions may only be levied against attorneys, inherent power sanctions can be imposed on counsel and parties alike. *Id.* at 299-300. But despite their differences, the two sanction powers act to supplement, rather than displace, each other. *See Hall*, 219 F. Supp. 3d at 119. Further, unlike Rule 11 sanctions, neither § 1927 nor inherent power sanctions have any "safe harbor" timing rule.[12]

---

[12] *See Trump v. Clinton*, 161 F.4th 671, 688 (11th Cir. 2025) ("inherent authority sanctions lack a 'safe harbor' rule"); *In re Carvalho*, 2019 WL 4877272, at *12 (Bankr. D.D.C. 2019) (same); *Intellect Wireless, Inc. v. Sharp Corp.*, 87 F. Supp. 3d 817, 839 (N.D. Ill. 2015) (collecting Circuit Court cases holding that "§ 1927 contains no parallel to Rule 11's safe harbor provision"); *Doe #1 v. Am. Fed'n of Gov't Emps.*, 2022 WL 22893392, at *2 (D.D.C. Dec. 9, 2022) (same).

Importantly, Plaintiff's voluntary dismissal does not divest this Court of jurisdiction to hold sanction proceedings.  That is because, as the Supreme Court held in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-98 (1990), sanction proceedings are "collateral issues" that may be decided even "after an action is no longer pending."  Though *Cooter & Gell* specifically involved Rule 11 sanctions, subsequent caselaw has applied its holding to sanctions imposed under § 1927 or the inherent powers.  *See, e.g., Haviland v. Specter*, 561 F. App'x 146, 150 (3d Cir. 2014) (affirming post-dismissal inherent power sanctions); *Bolivar v. Pocklington*, 975 F.2d 28, 31 (1st Cir. 1992) (affirming post-dismissal § 1927 sanctions).

**B.      Sanctions are warranted for Plaintiff and its counsel's bad faith and prejudicial assertion of federal jurisdiction and refusal to cure.**

"Federal courts are courts of limited jurisdiction," with power to adjudicate only those cases "authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).  For this reason, the party invoking federal jurisdiction bears the burden of establishing it, *see id.*, and the Federal Rules of Civil Procedure require that party to plead **facts** supporting the existence of federal jurisdiction.  *See* Fed. R. Civ. P. 8(a)(1) (a pleading "must contain… grounds for the court's jurisdiction).  Indeed, as the Second Circuit once said, "[t]he most important allegation in the complaint [is] the statement of jurisdiction—the so-called 'threshold' allegation." *Gutierrez v. Fox*, 141 F.3d 425, 426 (2d Cir. 1998) (citations omitted).

Due to its status as the "threshold" requirement of every federal case, it is axiomatic that a party and attorney must "at a minimum" confirm that subject matter jurisdiction exists before filing suit in federal court.  *Id.* at 426.  This pre-suit determination of jurisdiction is part of every federal litigant's duty under Rule 11 to conduct an "inquiry reasonable under the circumstances" that its "claims, defenses, and other legal contentions are warranted."  Fed. R. Civ. P. 11(b)(1).  Thus, "[i]f an attorney alleges jurisdiction when reasonable inquiry would show that it did not exist, **he may**

be held liable for sanctions **substantial in amount**." *Gutierrez*, 141 F.3d at 427 (citing *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir. 1989)) (emphasis added). As the Second Circuit explained:

> Subject matter jurisdiction is the *sine qua non* of the exercise of power by a federal court. One purpose of Rule 11 of the Federal Rules of Civil Procedure is to prevent an attorney from haling a party into federal court without having performed, at the very least, a reasonable inquiry into the jurisdictional underpinning of the lawsuit.

*Int'l Shipping*, 875 F.2d at 389.

Here, it is evident that Plaintiff and its counsel either failed to conduct the necessary pre-suit inquiry to confirm jurisdiction or, worse, filed suit in the absence of any good faith jurisdictional basis. To begin, Plaintiff's 18-page, 98-paragraph Complaint completely whiffed on the "threshold" allegation of jurisdiction. For while the Complaint baldly alleged in conclusory fashion that "there is complete diversity of citizenship between Plaintiff and all Defendants," *see* Compl. at ¶ 21, it failed entirely to actually allege the citizenship – *i.e.*, domicile – of each party. *See Novak v. Cap. Mgmt. & Dev. Corp.*, 452 F.3d 902, 906 (D.C. Cir. 2006) ("[T]he party seeking the exercise of diversity jurisdiction bears the burden of **pleading the citizenship of each and every party** to the action.") (emphasis added); *Bettis v. Montgomery*, 701 F. Supp. 256, 258 (D.D.C. 1989) (To establish diversity, "[a] plaintiff must affirmatively aver, with specificity, the *domiciles* of each of the parties to the action.") (italics in original).

Pleading diversity jurisdiction correctly would have required Plaintiff and its counsel to plead the specific domicile of Ms. Banks; and given her public persona, any reasonable inquiry into Ms. Banks's domicile would have begun with an ordinary Google search. That search, based on the plethora of news articles covering Ms. Banks's move to Australia as discussed above, would have demonstrated to Plaintiff and its counsel that Ms. Banks is a "stateless" person destroying any possibility of federal diversity jurisdiction in any case in which she is a party. *See Janvey v.*

*Proskauer Rose, LLP*, 59 F. Supp. 3d 1, 6 (D.D.C. 2014) ("An American citizen domiciled abroad…is 'stateless' for purposes of diversity jurisdiction… [and] 'destroy[s] complete diversity…'" (quoting *Swiger v. Allegheny Energy, Inc.,* 540 F.3d 179, 183–184 (3rd Cir.2008) and *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 829 (1989))).[13]

Perplexingly, while failing to affirmatively allege Ms. Banks's domicile, the Complaint acknowledged that Ms. Banks (and Mr. Martin) had relocated to Australia. *See* Compl. at ¶ 12.  It is thus confusing how Plaintiff and its counsel could have simultaneously averred the existence of complete diversity while having actual knowledge of facts reflecting Ms. Banks's statelessness for diversity purposes.   Perhaps, at the time of filing suit, Plaintiff's counsel was unfamiliar with the law regarding "stateless" persons for purposes of diversity jurisdiction. "However, a party is not absolved of responsibility under Rule 11 simply because he is ignorant of the law." *Danik, Inc. v. Hartmarx Corp.*, 120 F.R.D. 439, 445 (D.D.C. 1988).   On the contrary, "failure to conduct adequate inquiry into the law is an independently sufficient basis for the imposition of sanctions." *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1026 n. 24 (5th Cir. 1994) (citing *Matter of Ulmer*, 19 F.3d 234, 237 (5th Cir.1994)).

In any event, despite their pre-suit inquiry violations and pleading defects, Plaintiff and its counsel had every opportunity to remedy their improper conduct – without any prejudice to themselves or Defendants – by doing as Defendants' counsel had asked: voluntarily dismiss the case without forcing Defendants to file a motion, and re-file Plaintiff's claims in an appropriate forum.  Indeed, to the extent Plaintiff's counsel was unfamiliar with the law regarding "stateless" parties, Defendants' counsel made the issue abundantly clear during their initial communications

---

[13] There are similarly plenty of internet sources indicating that Ms. Banks was born in the U.S. and is therefore a U.S. citizen. *See, e.g.*, https://en.wikipedia.org/wiki/Tyra_Banks.

the day after suit was filed.  *See* <u>Exhibit 1</u> at 4.  Yet Plaintiff's counsel emphatically declined to dismiss the case and proclaimed that the assertion of diversity jurisdiction was well-founded – forcing Defendants to file their Motion to Dismiss and to incur the costs of doing so.

Notably, while the undersigned firmly believed that no good faith grounds for diversity jurisdiction existed, Plaintiff's counsel's confident emails, and her two requests for briefing extensions, led Defendants' counsel to believe that perhaps there were facts supporting Plaintiff's position they had not considered which would be presented in Plaintiff's opposition.  In other words, Defendants' counsel gave Plaintiff and its counsel the benefit of the doubt, and for that reason – as well as to preserve civility and candor between the parties and counsel – Defendants' counsel decided not to move for Rule 11 sanctions simultaneously with their Motion to Dismiss. All the more reason for Defendants' shock and disappointment when their exercise in restraint was rewarded with Plaintiff's voluntary dismissal the day of the twice-extended opposition deadline.

Courts faced with similar situations have imposed sanctions for such reckless and bad faith conduct.  For example, in *Rowland v. Fayed*, 115 F.R.D. 605, 606 (D.D.C. 1987), this Court sanctioned plaintiff's counsel for engaging in conduct identical to Plaintiff's conduct here: filing a jurisdictionally-defective complaint based on diversity, forcing defendants to move to dismiss, and then voluntarily dismissing the action.  This Court reached a similar result in *Son Ly v. Solin, Inc.*, 910 F. Supp. 2d 22, 30–32 (D.D.C. 2012), where like here, plaintiff's counsel voluntarily dismissed their jurisdictionally-defective complaint "on the day that their opposition to [the defendant's] motion would have been due."

This Court should again reach the same conclusion here.  Plaintiff and its counsel had no good faith basis to file this case in federal court, and not only filed it anyway, but maintained the action even after being confronted by Defendants' counsel with the jurisdictional issue and turning

down a potential cure that would have prejudiced nobody.  Instead, they delayed matters and forced Defendants to needlessly waste resources in filing their Motion to Dismiss.  This bad faith and reckless conduct warrants sanctions under § 1927 and the Court's inherent powers.

**C.    Sanctions are further warranted for Plaintiff and its counsel's public and prejudicial statements to the media.**

Trying cases in the media, though an increasing practice, is widely condemned.  *See Kramer v. Tribe*, 156 F.R.D. 96, 109 (D.N.J. 1994) ("With increased frequency practicing attorneys are utilizing the media to publicize their cases as a litigation tactic. This must stop if the integrity of the judicial enterprise is to be preserved."); *Joyce v. Town of Dennis*, 736 F. Supp. 2d 321, 325 (D. Mass. 2010) ("[T]he Court recognizes the risks of continued derogatory exchanges in the public domain and, because of that, directs both parties henceforth to refrain from trying their cases in the media. If the practice persists, the Court will impose sanctions and/or issue an order barring such statements going forward.").  "Not only is it disruptive, wasteful and inherently prejudicial, but it is also a clear violation of the Rules of Professional Conduct."  *Kramer*, 156 F.R.D. at 109-110 (citing Rules 3.6 and 8.4 of the Rules of Professional Conduct).  Rule 3.6 of the District of Columbia Rules of Professional Conduct, adopted by this Court under Local Civil Rule 83.15, provides:

> A lawyer engaged in a case being tried to a judge or jury shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of mass public communication and will create a serious and imminent threat of material prejudice to the proceeding.

As the email exchanges between counsel reflect, Plaintiff and its counsel attempted to use threats of media publicity to coax Defendants into agreeing to a multi-million dollar settlement.  *See* Exhibit 1 at 1.  In fact, in her November 6, 2025 email, Plaintiff's counsel stated in no uncertain terms that they would "begin responding to press inquiries next week **unless the parties have**

**begun to formalize settlement negotiations**." *Id.* (emphasis added).  Plaintiff and its counsel then made good on their threats after Defendants refused to kowtow to their settlement pressure tactics.  Due to Ms. Banks's fame, Plaintiff's and its counsel's press statements were widely disseminated, threatening the reputation of Ms. Banks, Mr. Martin, and the SMiZE & CREAM brand at large and potentially prejudicing future proceedings relating to the underlying Lease dispute.

Plaintiff's and its counsel's prejudicial media statements, in violation of the letter and spirit of the Rules of Professional Conduct, provide additional grounds for sanctions under § 1927 and the Court's inherent powers.

**D.    As sanctions, the Court should award Defendants their attorneys' fees incurred in connection with their Motion to Dismiss and this Motion.**

Per its text, the statutorily prescribed sanction under 28 U.S.C. § 1927 for vexatious litigation conduct is an order requiring reimbursement of "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Likewise, as noted above, sanctions under the Court's inherent powers are compensatory in nature and intended to "redress the wronged party for losses sustained," including by way of an "assessment of attorney's fees." *Goodyear*, 581 U.S. at 107-108 (internal quotations omitted).  Accordingly, as a sanction for Plaintiff's and its counsel's misconduct, this Court should order them to reimburse Defendants' reasonable attorneys' fees incurred in connection with their Motion to Dismiss.  The sanction should further include reimbursement of Defendants' reasonable attorneys' fees incurred in connection with this Motion for Sanctions.[14]

---

[14] *See Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 287-88 (2d Cir. 2021) (affirming inclusion of fees for litigation of sanctions motion pursuant to § 1927 and inherent powers); *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 148–49 (2d Cir. 2012) (same); *Roger Edwards, LLC v. Fiddes & Son, Ltd.*, 405 F. Supp. 2d 63, 65 (D. Me. 2005) (citing *Margolis v. Ryan*, 140 F.3d 850, 854–

To determine the proper amount of an attorneys' fees award imposed as a sanction, this Court generally employs the "lodestar" method, "in which the court multiplies a reasonable hourly rate by a reasonable number of hours expended." *Davis v. D.C. Child & Fam. Servs. Agency*, 304 F.R.D. 51, 63 (D.D.C. 2014); *See also Service Employees Int'l Union Loc. 32BJ v. Preeminent Protective Servs., Inc.*, 415 F. Supp. 3d 29, 35 (D.D.C. 2019), *aff'd*, 997 F.3d 1217 (D.C. Cir. 2021). The Court regularly references the *Laffey* Matrix – both the USAO and LSI versions – when considering the reasonable hourly rate to apply.[15] *See Service Employees*, *supra*; *Reyes v. Kimuell*, 270 F. Supp. 3d 30, 38 (D.D.C. 2017).

In support of their request for an attorneys' fees award, Defendants attach a Declaration from the undersigned as Exhibit 2 and a Statement of Account generated by the undersigned's law firm as Exhibit 3. The Statement of Account itemizes time and billing entries for work performed by Defendants' counsel in connection with the Motion to Dismiss and this Motion for Sanctions and sets forth the hourly rates charged. The charts below summarize the charged hourly rates and hours expended as reflected in the Statement of Account, and calculates the lodestar based on these actual figures:

| MOTION TO DISMISS | | | |
|---|---|---|---|
| | **Hourly Rate** | **Hours Worked** | **Lodestar** |
| **Steven J. Willner** | $440 | 26.1 | $11,484.00 |
| **Nicole M. Hardman** | $435 | 62.1 | $27,013.50 |
| **TOTAL** | | **88.2** | **$38,497.50** |

---

55 (9th Cir.1998) ("The fees and expenses available include those incurred in bringing the motion for sanctions, the only means available to a party by which to obtain sanctions…"); *In re W.A.R. LLP*, 2012 WL 1576002, at *30 (Bankr. D.D.C. May 4, 2012) (including in sanctions award the "attorney's fees incurred by [the injured party] in the preparation of and prosecution of any motion for sanctions addressing [the violating party's] conduct…").

[15] The LSI *Laffey* Matrix is available online at http://www.laffeymatrix.com/see.html. The most recent USAO *Laffey* Matrix, published for the years of 2015—2021, is available online at https://www.justice.gov/usao-dc/media/1184161/dl?inline=.

| MOTION FOR SANCTIONS | | | |
|---|---|---|---|
| | **Hourly Rate** | **Hours Worked** | **Lodestar** |
| **Steven J. Willner** | $440 | 26.7 | $11,748.00 |
| **Nicole M. Hardman** | $435 | 1.2 | $522.00 |
| **TOTAL** | | **27.9** | **$12,270.00** |

| **GRAND TOTAL** | | **116.1** | **$50,767.50** |
|---|---|---|---|

The Court should award Defendants the total lodestar of $50,767.50 as calculated above, which is based on both reasonable hourly rates and reasonable hours expended.  First, the hourly rates charged for Mr. Willner and Ms. Hardman – both of whom have 11 years' post-law school experience – are facially reasonable when compared to the applicable rates provided in the USAO *Laffey* Matrix ($532/hour for attorneys with 11-15 years of experience in 2020-2021) and the LSI *Laffey* Matrix ($948/hour for attorneys with 11-19 years of experience during the year of 6/01/24- 5/31/25).  Indeed, Mr. Willner's and Ms. Hardman's hourly rates are even below the LSI *Laffey* Matrix rates for attorneys with lesser experience ($839/hour for 8-10 years, $581/hour for 4-7 years, and $473/hour for 1-3 years).  Further, the hours expended are reasonable considering the comprehensiveness of the 35-page Motion to Dismiss and the number of issues that needed to be addressed, as well as the issues raised in this Motion and the showing required of Defendants to prevail on a sanctions motion and a request for attorney's fees.

Thus, Defendants respectfully request that the Court issue an award for attorney's fees in the amount of $50,767.50, plus any additional fees that Defendants may incur in connection with further proceedings on this Motion for Sanctions.  Defendants request that the award be reduced to a judgment which can be enforced by Defendants under available judgment enforcement mechanisms.  Additionally, Defendants request that the Court reprimand Plaintiff and its counsel for its bad faith conduct, including by directing them to cease from further attempts to publicize this case through the media.

## CONCLUSION

For the foregoing reasons, Defendants respectfully move this Court to grant this Motion and to impose the sanctions requested herein.

Respectfully submitted,

/s/    *Steven J. Willner*
Steven J. Willner (Bar No. 888230698)
Nicole M. Hardman (D.C. Bar No. 888155432; *Admission in this Court Pending*)
**NEUBERGER QUINN GIELEN RUBIN & GIBBER, P.A.**
One South Street, 27th Floor
Baltimore, Maryland 21202
Telephone:    (410) 332-8550
Facsimile:    (410) 332-8594
sjw@nqgrg.com | nmh@nqgrg.com

*Attorneys for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 9th day of January 2026, a copy of the foregoing was served via ECF/CM upon all counsel of record.

/s/    *Steven J. Willner*
Steven J. Willner (Bar No. 888230698)